# Supreme Court of Texas

No. 22-0420

In the Interest of J.S., a Child

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**Argued February 2, 2023**

JUSTICE BUSBY delivered the opinion of the Court, in which Chief Justice Hecht, Justice Lehrmann, Justice Devine, Justice Blacklock, Justice Bland, Justice Huddle, and Justice Young joined.

JUSTICE BOYD filed a concurring opinion.

Every day, trial courts across Texas make findings in issuing their orders. Although all findings play an important role in ensuring that justice is delivered for the people of this State, few are as consequential as the findings at issue in this parental rights termination suit. The Legislature has directed courts to resolve these suits promptly or they lose jurisdiction automatically. The statute does permit courts to extend the automatic dismissal deadline, but a court "may not retain the suit . . . unless" it "makes [two] findings": (1) "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship" of the Department of Family and Protective

Services, and (2) continuing that conservatorship "is in the best interest of the child." TEX. FAM. CODE § 263.401(b).

We hold that although this unique statute requires trial courts to make the "extraordinary circumstances" and "best interest" findings expressly (either in writing or on the record), that requirement is mandatory rather than jurisdictional. As a result, a parent whose rights have been terminated cannot complain for the first time on appeal that the trial court failed to make both findings when it granted an extension. Instead, the parent generally must object before the initial automatic dismissal deadline passes.

In this case, the trial court made only one of the required findings when it extended the dismissal deadline. Respondent Mother appealed a subsequent judgment terminating her parental rights and naming petitioner Department of Family and Protective Services as the child's permanent managing conservator. The court of appeals vacated that judgment sua sponte and dismissed the Department's termination suit, concluding that the trial court lost jurisdiction when it failed to make the other required finding by the initial dismissal deadline. Because the findings requirement is not jurisdictional and Mother did not timely object that the trial court granted the extension without a required finding, the court of appeals erred. Accordingly, we reverse its judgment of dismissal and remand for it to address Mother's appellate issues.

## BACKGROUND

Two days after J.S. was born, the Department received a report of abuse or neglect by Mother, who had tested positive for methamphetamines at a prenatal visit. Although both Mother and J.S.

2

tested negative at J.S.'s birth, both of J.S.'s parents have a significant history of drug use and had previously lost custody of another child due to their drug use.

In August 2019, J.S.'s parents were ordered to complete services through the Department, including substance abuse and psychological assessments, parenting classes, and random drug testing. From August 2019 until February 2020, J.S.'s parents refused to participate in those court-ordered services despite many reminders and encouragements to do so from the Department's caseworker. When the caseworker made an unannounced visit to the home in January 2020, she recorded numerous safety and sanitation problems.

On February 4, 2020, the Department filed its initial petition to remove J.S. from Mother and Father's custody, terminate their parental rights, and appoint the Department as J.S.'s permanent sole managing conservator. The trial court signed temporary orders the same day appointing the Department as temporary managing conservator, and the Department then took possession of J.S., who required urgent treatment for an ear infection. The day after coming into the Department's custody, J.S.'s hair follicle sample tested positive for methamphetamines and marijuana, with the methamphetamine test recording more than thirteen times the level needed to obtain a positive result. At the time of trial in June 2021, J.S. had been in a foster-to-adopt home for six months and had improved substantially since being removed from the custody of his parents.

The Department's termination suit was set for trial by remote appearance on February 8, 2021, which was also the initial deadline for

either commencing trial or dismissing the suit under Section 263.401(a) of the Family Code. J.S.'s attorney ad litem did not appear. The trial court asked counsel for both parents to confirm that their clients had waived their jury trial rights. Both counsel denied that their clients had done so, but both admitted that they had not filed timely jury demands. The Department's counsel noted that the parties had been aware of the trial setting "since at least October, November."

After conferring with counsel briefly off the record, the trial court rescheduled the trial for June 14, 2021, without objection from any party. Before the February 8 proceeding adjourned, the court asked the parties if there was "anything else?" Counsel for the Department then asked the trial court to "find that it's in the child's best interests to remain in the care of the Department and extend the case so that it can be officially retained on the Court's docket" given the new orders and timeline. In doing so, the Department's counsel was requesting an extension under Section 263.401 of the Texas Family Code, which provides in relevant part:

> (a) Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court's jurisdiction over the [department's] suit . . . is terminated and the suit is automatically dismissed without a court order. . . .

> (b) Unless the court has commenced the trial on the merits, the court *may not retain* the suit on the court's docket after the time described by Subsection (a) *unless the court finds* that

4

> ***extraordinary circumstances*** necessitate the child remaining in the temporary managing conservatorship of the department ***and*** that continuing the appointment of the department as temporary managing conservator is in the ***best interest*** of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a). If the court retains the suit on the court's docket, the court shall render an order in which the court:
>
> (1)   schedules the new date on which the suit will be automatically dismissed if the trial on the merits has not commenced, which date must be not later than the 180th day after the time described by Subsection (a);
>
> (2)   makes further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit; and
>
> (3)   sets the trial on the merits on a date not later than the date specified under Subdivision (1).

TEX. FAM. CODE § 263.401 (emphases added).

Neither Mother's nor Father's counsel objected to the Department's request for an extension. In response, the trial court made an oral finding "that it's in the best interests of the child for this case to be extended, that the child remain in its current placement and that the Department remain as the temporary managing conservator of the child." The court also set the new automatic dismissal date and ordered that all of its previous orders would remain in place. The court did not mention extraordinary circumstances.

Before concluding the February 8 proceeding, the trial court asked two more times if there was "anything else" the attorneys wanted

5

to bring to its attention. Counsel for both Mother and Father answered no on the first occasion and were silent on the second.

On March 30, 2021, the trial court signed a written order providing in relevant part:

> Pursuant to § 263.401(b), Texas Family Code, the Court finds that this Court has continuing jurisdiction of this suit, and that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the Department and that continuing the appointment of the Department as temporary managing conservator is in the best interest of the child. An order to retain the case on the Court's docket should be granted.

The case then proceeded to a jury trial from June 14 to 16, 2021. Attorneys for both Mother and Father participated, but neither Mother nor Father appeared or testified at trial.

The jury ultimately found against Mother and Father and in favor of the Department on all twelve questions submitted to it, returning the verdict on the same day the trial concluded. The trial court's final judgment, signed September 20, 2021, echoed the jury's findings and terminated Mother's and Father's parental rights to J.S. under paragraphs (D), (E), (N), (O), and (P) of Section 161.001(b)(1) of the Family Code. The judgment also appointed the Department as J.S.'s permanent managing conservator.

Only Mother appealed, challenging the legal and factual sufficiency of the evidence supporting the jury's findings, as well as some of the trial court's evidentiary rulings. The court of appeals requested sua sponte that the parties brief whether the trial court lost jurisdiction under Section 263.401(a) of the Family Code prior to trial and judgment.

6

The court of appeals concluded that the trial court's jurisdiction expired on February 8, 2021—the first Monday after the first anniversary of the date the trial court appointed the Department as temporary managing conservator. 663 S.W.3d 784, 786 (Tex. App.— Dallas 2022). Accordingly, it vacated the trial court's September 2021 judgment and dismissed the case for want of subject-matter jurisdiction. *Id.*

In the court of appeals' view, the trial court's "written findings on March 30 came too late to extend the jurisdictional period and maintain the case on the court's docket" under Section 263.401(a). *Id.* at 788. In addition, the trial court's oral findings on the record on February 8, though timely, were insufficient to satisfy the requirement that the court find "extraordinary circumstances." *Id.* at 788-89. The court of appeals interpreted our cases as holding that although some requirements of Section 263.401(b) are not jurisdictional (including setting the new dismissal date and trial date and making any necessary temporary orders), the "extraordinary circumstances" and "best interest" findings are jurisdictional and not subject to waiver. *Id.* at 789. We granted the Department's petition for review.

## ANALYSIS

The Department raises two issues in its petition. First, it argues that trial courts need not expressly make the twin findings required to grant an extension under Section 263.401(b); rather, those findings should be implied when supported by the record. Second, the Department contends that even if the findings must be made expressly, the trial court's failure to do so does not deprive it of subject-matter

7

jurisdiction. We address each issue in turn. Because both issues concern statutory interpretation, and thus raise questions of law, we review them de novo. *Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019).

## I.  The findings must be made expressly.

According to the Department, the language of Section 263.401(b) is insufficiently explicit to require that a trial court make the predicate findings expressly, so reviewing courts should imply them if supported by the record. It also contends that there was ample evidence before the trial court at the February 8 hearing to support an implied finding of "extraordinary circumstances," including: Mother's and Father's last-minute requests for a jury trial, the absence of J.S.'s attorney ad litem when the case was called for trial, and the logistical difficulties associated with scheduling a jury trial while this Court's COVID-19 Emergency Orders were in place.

We disagree that the findings may be implied. To the contrary, our cases hold that trial courts "must make [the two] specific findings to support the extension order" for "the suit to remain on the court's docket beyond the one-year dismissal date." *In re G.X.H.*, 627 S.W.3d 288, 298-99 (Tex. 2021) (quoting in part *In re Dep't of Fam. & Protective Servs.*, 273 S.W.3d 637, 643 (Tex. 2009) (hereafter "*DFPS*")). And for good reason: the Legislature has amended Section 263.401(b) at least four times to emphasize the importance of "mak[ing] those findings"—which involve depriving parents of fundamental constitutional rights—as well as the close connection between the findings and the trial court's subject-matter jurisdiction.

8

### A. This Court's precedents require express findings.

We have held twice that implied "best interest" and "extraordinary circumstances" findings are inconsistent with Section 263.401(b). In *DFPS*, we concluded that the trial court "*cannot just enter an extension order . . . .* In order for the suit to remain on the court's docket beyond the one-year dismissal date, the court *must make specific findings* to support the extension order." 273 S.W.3d at 643 (emphases added). We reaffirmed that holding just two terms ago in *G.X.H.*, explaining that *DFPS* "recognized the importance of these two findings" and quoting the above language from *DFPS*. 627 S.W.3d at 298-99. We thus concluded that to avoid error, the findings must be "made orally on the record or in some other writing." *Id.* at 299. We do so again today.

Our decisions addressing implied findings have typically involved implied findings of fact and conclusions of law to support a judgment,[1] not a procedural case-processing requirement like the one at issue here. In addition, our decision in *G.X.H.* to presume that the trial court made the "extraordinary circumstances" and "best interest" findings orally at a hearing of which no record was taken would have been unnecessary if the findings could be implied. *Id.* In that event, we would have reviewed the entire record of the case ourselves to confirm whether it could have supported the *G.X.H.* trial court making those findings when it extended the automatic dismissal date. But we did no such thing. Instead, we

---

[1] *See, e.g.*, *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017).

9

assumed that the findings had been made orally but simply not memorialized in a reporter's record.

In this case, unlike in *G.X.H.*, a record of the hearing is available and it demonstrates that although the trial court did make the "best interest" finding, it failed to make the "extraordinary circumstances" finding. Although this failure was an error, it does not require reversal for the reasons we explain in Part II.

### B. The statute's text and amendment history show that express findings are mandatory.

The construction we adopted in *DFPS* and *G.X.H.* is well grounded in the choices the Legislature made in crafting and amending the text of Section 263.401. As our sister high court recently observed, "[t]he starting point for determining statutory meaning is to examine both the literal text and its context; and *part of the statutory context includes the history of the statute in question*." *Stredic v. State*, 663 S.W.3d 646, 659 (Tex. Crim. App. 2022) (emphasis added). Statutory history "concerns *how the law changed*, which can help clarify *what the law means*"; unlike legislative history, it "does not concern collateral or speculative questions such as the policy goals that motivated individual legislators, the reasons that a given version of a legislative proposal was not adopted, or the like." *Brown v. City of Houston*, 660 S.W.3d 749, 755 (Tex. 2023); *see also Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 445 n.31 (Tex. 2011) (Willett, J., concurring) ("[N]obody should quarrel with examining how an enacted statute changes over time."); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF

10

LEGAL TEXTS 256 (2012) ("[A] change in the language of a prior statute presumably connotes a change in meaning.").

In the case of Section 263.401(b), four different changes to statutory language—in 2005, 2017, 2019, and 2021—demonstrate the Legislature's insistence that the "best interest" and "extraordinary circumstances" findings be made expressly.

### 1. The 2005 amendments require trial courts to "make th[e] findings."

When Section 263.401 was first enacted in 1997, it provided for an extension of the dismissal deadline if appointment of the Department as temporary managing conservator was in the best interest of the child. Act of May 31, 1997, 75th Leg., R.S., ch. 1022, § 90, 1997 Tex. Gen. Laws 3733, 3768-69. In 2001, the Legislature amended the statute to require an extending court to "find[] that" continuing the appointment was in the best interest of the child. Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 8, 2001 Tex. Gen. Laws 2395, 2396. And in 2005, it required a finding of extraordinary circumstances as well. Act of May 29, 2005, 79th Leg., R.S., ch. 268, § 1.40, 2005 Tex. Gen. Laws 621, 636.

But more importantly for present purposes, the 2005 Legislature also amended subsection (b) to provide that "[t]he court may not retain the suit on the court's docket . . . unless the court finds" both extraordinary circumstances and best interest. *Id.* It then included a second sentence: "If the court *makes those findings*, the court may retain

11

the suit on the court's docket for a period" up to 180 days.[2] *Id.* (emphasis added). This combination of "make findings" language with "may not retain on the docket unless the court finds" language appears to be unique to this particular statute. And the most relevant contemporaneous definition of "make" involves affirmative and observable actions by the "maker,"[3] a quality that is definitionally missing when an action is implied.

In addition, the only independent purpose served by the second sentence is to require that the trial court actually "make[] those findings" as a prerequisite to retaining the suit. TEX. FAM. CODE § 263.401(b). The prior sentence spells out which findings are required to retain the suit, and the subsequent sentence provides that the

---

[2] That sentence was in the statute in February 2021, when the relevant trial court proceedings occurred, and it remains there today. *See* TEX. FAM. CODE § 263.401(b).

[3] *Make*, BLACK'S LAW DICTIONARY 975 (8th ed. 2004) ("1. To cause (something) to exist . . . . 2. To enact (something) . . . . 3. To acquire (something) . . . . 4. To legally perform, as by executing, signing, or delivering (a document)."). Our concurring colleague criticizes us for giving "make" its legal rather than its common, ordinary meaning, observing that citizens should be able to "rely on the statue's language to mean what it plainly says." *Post* at 12. We agree that "[u]ndefined terms in a statute are *typically* given their ordinary meaning, but if a *different or more precise definition is apparent from the term's use in the context of the statute*, we apply that meaning." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (emphases added) (citing *In re Hall*, 286 S.W.3d 925, 928-29 (Tex. 2009)). Here, context unambiguously shows that Section 263.401(b)'s requirement to "make" findings regulates the conduct of trial court judges, who are familiar with the technical legal meanings of words. We therefore give the word "make" its contemporaneous legal meaning and decline to hold that a court can make these findings simply by imagining but not announcing them, as the concurrence contends.

12

extension is limited to 180 days. *See id.* Adopting an interpretation of Section 263.401(b) that renders the sentence "pointless" would run afoul of the presumption against surplusage. *See* SCALIA & GARNER, *supra*, at 176; *see also State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006) ("In construing a statute, we give effect to all its words and, if possible, do not treat any statutory language as mere surplusage.").

## 2. The 2017 amendments provide that the findings are necessary to retain jurisdiction.

In 2017, the Legislature amended the statute again to provide that making the "best interest" and "extraordinary circumstances" findings is a prerequisite to avoiding automatic dismissal and termination of the court's jurisdiction. Act of May 28, 2017, 85th Leg., R.S., ch. 319, § 12, 2017 Tex. Gen. Laws 713, 718-19. Specifically, the Legislature provided that "[u]nless the court has . . . granted an extension under Subsection (b)," its "jurisdiction . . . is terminated and the suit is automatically dismissed without a court order." *Id.* Through these amendments, the Legislature reaffirmed the hefty stakes of these proceedings and demonstrated the importance of actually making the "extraordinary circumstances" and "best interest" findings required by subsection (b).

Since 2017, the findings have been "[a] condition[] precedent to the right of the court to proceed after it has acquired jurisdiction over the subject-matter and of the person" and a certain time has elapsed.[4] Although we conclude in Part II that the findings are not themselves

---

[4] *Chandler v. Denton*, 747 P.2d 938, 942 (Okla. 1987).

13

jurisdictional, the Legislature's choice to give them an essential role in avoiding the automatic termination of jurisdiction highlights their mandatory nature.

This understanding of the findings requirement is also consistent with the nature of these proceedings, which incorporate heightened protections against government interference with parents' fundamental liberty interest in the care, custody, and control of their children. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019). In recognition of this interest, all branches of Texas government have implemented strong due-process protections for parents facing termination of their parental rights. *See, e.g., In re C.J.C.*, 603 S.W.3d 804, 807 (Tex. 2020) (citing TEX. FAM. CODE § 153.131(a)). This context also counsels in favor of enforcing plain statutory prerequisites to the continued exercise of jurisdiction.

### 3. The 2019 and 2021 amendments add mandatory "shall" language regarding the findings.

Amendments passed by the Legislature in the two subsequent sessions further confirm that the "extraordinary circumstances" and "best interest" findings must be made expressly. In 2019, the Legislature added Section 263.401(b-2) to the statute, which provides:

> When considering under Subsection (b) whether to find that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department for a case in which the court orders a parent to complete a substance abuse treatment program,

14

the court shall consider whether the parent made a good faith effort to successfully complete the program.[5]

The Legislature's use of mandatory "shall consider" language in this new subsection creates an intermediate step that trial courts are obliged to take before making the "extraordinary circumstances" finding in Section 263.401(b). Allowing trial courts to make the finding by implication would collapse this careful, multi-step analysis into a single on-the-fly call. We are not at liberty to provide trial courts with more flexibility in these cases than the Legislature clearly specified they should have.

Also informative are the most recent amendments to the statute, which the Legislature adopted in the 2021 session. Those amendments added Section 263.401(b-3),[6] which provides:

> (b-3) A court *shall find* under Subsection (b) that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department if:
>
> (1) a parent of a child has made a good faith effort to successfully complete the service plan but needs additional time; and
>
> (2) on completion of the service plan the court intends to order the child returned to the parent.

(Emphasis added). Like subsection (b-2), subsection (b-3) uses mandatory language, in this case describing a non-exhaustive set of

---

[5] Act of May 22, 2019, 86th Leg., R.S., ch. 783, § 1, 2019 Tex. Gen. Laws 2228, 2228.

[6] *See* Act of Apr. 28, 2021, 87th Leg., R.S., ch. 8, § 9, 2021 Tex. Gen. Laws 10, 15.

circumstances under which a trial court "shall" make an "extraordinary circumstances" finding. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999) ("We generally construe the word 'shall' as mandatory, unless legislative intent suggests otherwise.").

Although these 2021 amendments were not in force when the February 8 hearing occurred, they provide further evidence of the Legislature's ongoing efforts to ensure that the "best interest" and "extraordinary circumstances" findings must be made expressly as a prerequisite to the trial court granting the extension and retaining the suit on its docket. In sum, Section 263.401's unique language,[7]

---

[7] Our review of Texas statutes suggests that Section 263.401(b)'s combination of "unless the court finds" language with "retain the suit on the court's docket" language is a unique formulation. Thus, our holding that Section 263.401(b) requires express findings should not be understood to indicate a view regarding other statutes that specify what actions a court "shall" take "unless" it makes certain findings. Courts of appeals have taken different approaches to such language, which appears in a variety of statutes. *Compare In re K.M.M.*, 326 S.W.3d 714, 715-16 (Tex. App.—Amarillo 2010, no pet.) (construing Family Code Section 107.021(a-1) as requiring trial court to make express finding that child's interests will be adequately represented by party to private termination suit, such that amicus attorney or attorney ad litem need not be appointed), *In re D.M.O.*, No. 04-17-00290-CV, 2018 WL 1402030, at *3 (Tex. App.—San Antonio Mar. 21, 2018, no pet.) (same), *and Mason-Murphy v. Grabowski*, 317 S.W.3d 923, 928-29 (Tex. App.—Austin 2010, no pet.) (construing Family Code Section 153.317(a) as requiring trial court to make express finding regarding child's best interest when conservator elects to alter standard possession times), *with Ruiz v. Ruiz*, No. 02-12-00136-CV, 2013 WL 530958, at *3-4 (Tex. App.—Fort Worth Feb. 14, 2013, no pet.) (construing Family Code Section 153.317(a) as allowing trial court to make implied best-interest findings), *In re F.R.N.*, No. 10-18-00233-CV, 2019 WL 3801630, at *5 (Tex. App.—Waco Aug. 7, 2019, no pet.) (construing Family Code Section 153.131(a) as allowing trial court to make implied best-interest findings when deciding not to appoint child's parent(s) as sole managing or joint managing conservator(s)), *In re J.R.W.*, No. 05-15-01479-CV, 2017 WL

16

amendment history, and fundamental-rights context, taken together, demonstrate that trial courts must expressly make the "extraordinary circumstances" and "best interest" findings either in a written order or orally at a hearing, and their failure to do so is error.

### C. The Department's and concurrence's arguments do not alter the statute's meaning.

The Department and the concurrence cite various cases and other statutes in support of their position that the findings can be implied. But their arguments are beside the point: they wrongly conflate a requirement that the findings be made expressly with a requirement that they be made in writing, and they incorrectly assume that if the findings must be made expressly, they must be jurisdictional.

First, the Department and the concurrence contend that the Legislature uses different language when it wishes to require express findings, pointing to other provisions of the Family Code that direct trial courts to issue orders stating certain findings. *See, e.g.*, TEX. FAM. CODE §§ 261.504(b), 263.002(b), 263.109(b)(1), 263.403(a)(1), (b)(1), (d), 264.203(n)(1). For instance, Section 263.109(b)(1) requires the trial court to "*render an order* that . . . *states the reasons for finding* that visitation [between a child and a parent] is not in the child's best interest," and Section 263.403(b)(1) requires a court that orders a

---

3083930, at *5-6 (Tex. App.—Dallas July 20, 2017, pet. denied) (same), *and Estate of Nunu*, 542 S.W.3d 67, 85-87 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (construing trial court's opinion as making implied finding under Estates Code Section 405.001(b)). We take no position regarding whether "unless the court finds" language, standing alone, requires a trial court to make express findings.

17

monitored return of a child to the child's parent(s) to "*include in the order specific findings* regarding the grounds for the order." (Emphases added).

All these statutes require trial courts to issue *written* findings. The Department and the concurrence also point to a statute that requires trial courts to "make findings in the record."[8]  But no party in this case contends that Section 263.401(b) requires trial courts to make the required findings only in written orders or only on the record. Rather, the question raised here is whether a trial court seeking to retain a termination suit on its docket needs to actually "make" these findings at all.

Two terms ago in *G.X.H.*, we observed that trial courts could comply with Section 263.401(b) by making the required findings orally during a hearing, and no party has asked us to reconsider that holding. 627 S.W.3d at 299.  "[I]n cases involving statutory construction, stare decisis has its greatest force," and we see no reason to depart from that principle here. *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 655 (Tex. 2020) (internal quotation omitted).  *G.X.H.* applied a presumption that the trial court *actually had* made those findings orally because no reporter's record was available, and we explained that even though the findings should be made in a written order "as a matter of course . . . , the failure to do so is not error, provided the findings are made orally on the record or in some other writing."  627 S.W.3d at 299.

---

[8] TEX. FAM. CODE § 266.005 (requiring court declining to follow recommendation of health care professional regarding child in the Department's conservatorship to "make findings in the record supporting the court's order").

18

Simply put, Section 263.401(b) gives trial courts some flexibility regarding *how* they make the required findings. We agree with the concurrence that the statute is "silent" in the sense that, unlike the other statutes cited above, it allows courts to choose whether to express their findings orally or in writing. But the unique language that the Legislature selected for Section 263.401(b)—which combines "may not retain the suit on the court's docket" with "unless the court finds"—does not give courts discretion to choose *whether* to express those findings. Rather, it requires that the courts "make[] those findings" in some form. Thus, there is no statutory silence that speaks to that issue. *Cf. post* at 14 (Boyd, J., concurring in judgment).[9]

Second, the Department argues that construing Section 263.401(b) to allow implied findings would be consistent with "the modern direction of policy," which "is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction." *Tex. Mut. Ins. Co. v. Chicas*, 593 S.W.3d 284, 286 (Tex. 2019) (quoting *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000)). But this argument incorrectly assumes that if the findings are

---

[9] As both our Court and the Supreme Court of the United States have explained, "the force of any negative implication . . . depends on context." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 877 (Tex. 2018) (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013); *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 429 (Tex. 2017)). "[T]he *expressio unius* canon does not apply unless it is fair to suppose that [the Legislature] considered the unnamed possibility and meant to say no to it." *Forest Oil*, 518 S.W.3d at 429 (internal citations and quotation marks omitted). Given the differences between Section 263.401(b) and the other statutes on which the Department and the concurrence rely, we conclude that the canon does not apply.

19

mandatory, they are also jurisdictional. As we discuss next, these are two different inquiries. We have often explained that "just because a statutory requirement is mandatory does not mean that compliance with it is jurisdictional."[10] Because a trial court's failure to make the mandatory Section 263.401(b) findings expressly does not affect the separate jurisdictional inquiry, we reject the Department's invitation to collapse these issues.

## II. Failing to make a mandatory finding does not deprive the trial court of jurisdiction.

In its second issue, the Department urges us to reverse the court of appeals' dismissal because the trial court's failure to make an express "extraordinary circumstances" finding prior to the initial automatic dismissal date did not divest the trial court of subject-matter jurisdiction. It points out that statutory requirements are presumptively non-jurisdictional and that jurisdictional language originally appearing in Section 263.401(b)—which requires the findings—was later removed by the Legislature. In addition, the Department argues that we already held in *G.X.H.* that the findings, although prerequisites to maintaining jurisdiction, are not themselves jurisdictional requirements.

Mother counters that *G.X.H.* confirmed that Section 263.401(a) is jurisdictional and expressly held that the finding requirements in the

---

[10] *Albertson's*, 984 S.W.2d at 961; *see also S.C. v. M.B.*, 650 S.W.3d 428, 443 (Tex. 2022); *Chicas*, 593 S.W.3d at 286; *AC Ints., L.P. v. Tex. Comm'n on Env't Quality*, 543 S.W.3d 703, 710 (Tex. 2018); *City of DeSoto v. White*, 288 S.W.3d 389, 395 (Tex. 2009); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 494 (Tex. 2001).

first sentence of Section 263.401(b) are prerequisites for granting an extension of the automatic dismissal date. *See G.X.H.*, 627 S.W.3d at 297. Thus, she argues deductive reasoning suggests that the first sentence in Section 263.401(b) must also be jurisdictional. Mother further claims that the "other requirements" that *G.X.H.* held were not jurisdictional referred to the requirements in the third sentence of Section 263.401(b), rather than every single requirement other than the "failure to timely extend the automatic dismissal date before that date passes." *See id.* at 301. In arguing that the findings are jurisdictional, Mother favorably cites the Beaumont Court of Appeals' recent decision in *In re F.S.*, which held that Section 263.401(b)

> apparently allow[s] a party to collaterally attack a judgment terminating a parent's rights in the rare case when the automatic-one-year-dismissal deadline has passed and the trial court failed to state its extraordinary circumstances and good cause findings on the record even though it granted a party's request to extend the statutory deadline.

No. 09-22-00114-CV, 2022 WL 4371008, at *5 (Tex. App.—Beaumont Sept. 22, 2022, pet. filed).

A review of the statutory text, amendment history, and our precedent shows that the Department is correct. We presume that statutory requirements are not jurisdictional absent "clear contrary legislative intent." *Chicas*, 593 S.W.3d at 287; *see also Engelman Irrigation Dist. v. Shields Bros.,* 514 S.W.3d 746, 752 (Tex. 2017); *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010); *City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009). The only jurisdictional language in Section 263.401 appears in subsection (a),

which provides that "the court's jurisdiction . . . is terminated" on the automatic dismissal date "[u]nless the court has . . . granted an extension under Subsection (b) or (b-1)." TEX. FAM. CODE § 263.401(a). That language was added to the statute in the 2017 amendments,[11] which came sixteen years after the Legislature *removed* expressly jurisdictional language from subsection (b) in 2001.[12]

The 2001 amendments to the statute—which deleted the phrase "extend the court's jurisdiction" from subsection (b) and replaced it with "retain the suit on the court's docket"[13]—demonstrate that a trial court's failure to make the required findings is a non-jurisdictional error. "[W]e should always refrain from rewriting text that lawmakers chose, but we should be particularly unwilling to reinsert language that the Legislature has elected to delete." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009). In addition, the Legislature's 2017 decision to make subsection (a) explicitly jurisdictional without revisiting its removal of jurisdictional language from subsection (b) provides further confirmation that the requirements of the latter subsection are not jurisdictional.[14]

---

[11] Act of May 28, 2017, 85th Leg., R.S., ch. 319, § 12, 2017 Tex. Gen. Laws 713, 718-19.

[12] Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 8, 2001 Tex. Gen. Laws 2395, 2396.

[13] *See id.*

[14] *See* Act of May 28, 2017, 85th Leg., R.S., ch. 319, § 12, 2017 Tex. Gen. Laws 713, 718-19.

Our recent decision in *G.X.H.* supports this conclusion. There, we held that although

> a trial court's failure to timely extend the automatic dismissal date before that date passes—through a docket-sheet notation or otherwise—is jurisdictional, claimed defects relating to the other requirements of 263.401(b) are not. Accordingly, with the exception of a trial court's failure to extend the automatic dismissal date before it passes, complaints regarding the trial court's compliance with the requirements in subsection (b) must be preserved for appellate review.

627 S.W.3d at 301. The "other" non-jurisdictional requirements of Section 263.401(b) include all the requirements of that subsection except the requirement that the trial court grant an extension of the initial automatic dismissal date before it passes—a requirement that also appears in subsection (a), which does contain jurisdictional language as just discussed. *See* TEX. FAM. CODE § 263.401(a). Thus, although subsection (b)'s requirements that the trial court make the "extraordinary circumstances" and "best interest" findings are mandatory, they are not jurisdictional. *See M. P. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-22-00163-CV, 2022 WL 4281617, at *5 (Tex. App.—Austin Sept. 16, 2022, pet. filed) (applying *G.X.H.* to hold that trial court's failure to make best interest finding before initial automatic dismissal date passed was not jurisdictional error and was subject to waiver by parents). We disapprove the contrary holding of *F.S.*, 2022 WL 4371008, at *5.

*G.X.H.* explained that the trial court in that case did not need to issue a written order expressly addressing the three matters enumerated in the final sentence of Section 263.401(b). 627 S.W.3d at

23

300-01.  In doing so, we declined to "loop" those requirements through the jurisdictional language of Section 263.401(a), and we see no reason to treat the "extraordinary circumstances" and "best interest" findings any differently.  Because there is no clear indication that the Legislature wished to expand the jurisdictional requirements of Section 263.401 beyond the one we identified in *G.X.H.*—specifically, the requirement that trial courts extend the automatic dismissal date before the date passes through a docket sheet notation or otherwise—we hold that the findings requirement is not jurisdictional.

This conclusion is also consistent with our decision in *DFPS*, in which we held that the Section's "retain the suit on the court's docket" language—which at the time also applied  to the automatic dismissal date—was not jurisdictional.  273 S.W.3d at 642.  As we observed in *G.X.H.*, the Legislature's 2017 amendments to subsection (a) changed the consequence of the expiration of the dismissal deadline (absent an extension or the commencement of trial) so that it is now jurisdictional.  627 S.W.3d at 295 n.4.  But the same "retain the suit on the court's docket" language that we held was non-jurisdictional in *DFPS* continues to apply to subsection (b)'s requirement that the court make "extraordinary circumstances" and "best interest" findings.  *See* TEX. FAM. CODE § 263.401(b).

The concurrence disagrees, arguing that the findings under subsection (b) must be jurisdictional because they are a "prerequisite" to granting an extension of the automatic dismissal date, and such an extension is necessary to avoid termination of jurisdiction under subsection (a).  *Post* at 4-5.  But as discussed above, we presume the

24

opposite: statutory requirements are not jurisdictional absent clear legislative intent to the contrary. *Chicas*, 593 S.W.3d at 287. And here, the Legislature expressed its intent in 2001 by *removing* jurisdictional language from subsection (b), which requires the findings.[15] That subsection now provides that a court "may not retain the suit on the court's docket" unless the findings are made. TEX. FAM. CODE § 263.401(b).

The concurrence contends this language must mean the same thing as subsection (a)'s declaration that the court's "jurisdiction over the suit . . . is terminated." *Post* at 4-5. To the contrary, "retain the suit on the court's docket" language generally refers to non-jurisdictional dismissals "for want of prosecution without reference to the merits of the case." *DFPS*, 273 S.W.3d at 653 (Hecht, J., dissenting).

We recognized at the beginning of this century that "[t]he classification of a matter as one of [subject-matter] jurisdiction . . . opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment." *Dubai Petroleum Co.*, 12 S.W.3d at 76 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. b, at 118 (1982)). We therefore adopted the "modern direction of policy . . . to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction," *id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. e, at 113 ), which is the reason we require "clear legislative

---

[15] *See id.*

intent" to make a provision jurisdictional, *Chicas*, 593 S.W.3d at 287 (quoting *United Servs. Auto. Ass'n*, 307 S.W.3d at 306).

The concurrence's view that a statutory prerequisite to a jurisdictional requirement must likewise be jurisdictional would expand the number of jurisdictional requirements significantly—contrary to our policy of reducing the vulnerability of judgments to collateral attack. "Importantly, the principal justification for this Court's general reluctance to view statutory requirements as jurisdictional—ensuring a judgment's finality—is even more pronounced" in cases involving child custody and parental rights. *In re D.S.*, 602 S.W.3d 504, 520 (Tex. 2020) (Lehrmann, J., concurring). Holding that the express finding requirements of Section 263.401(b) are jurisdictional would permit relitigation of parental rights terminations years after judgments are signed and children are permanently placed elsewhere, or even adopted. "Such uncertainty harms children and parents alike." *Id.*

In sum, the only understanding of the scope of Section 263.401's jurisdictional requirements that comports with the text, structure, and amendment history of that provision as well as our precedent is the one urged by the Department. We therefore reject the alternative interpretation urged by the court of appeals, Mother, and the concurrence, which would make it an incurable jurisdictional error for the trial court to fail to make the "extraordinary circumstances" and "best interest" findings prior to the initial automatic dismissal deadline.

26

### III. A court of appeals may not consider for the first time on appeal whether the trial court failed to make a required finding by the automatic dismissal deadline.

Applying these holdings here, we conclude that Mother did not timely apprise the trial court of her complaint that it failed to make the required "extraordinary circumstances" finding when it extended the automatic dismissal deadline. Therefore, she could not present that complaint for appellate review. *See* TEX. R. APP. P. 33.1(a). And the court of appeals erred in raising this non-jurisdictional issue sua sponte. *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020).

The record of the February 8 hearing shows that Mother did not mention the "extraordinary circumstances" finding, much less bring the failure to make the finding to the trial court's attention. When the court asked if there were any objections to the Department's motion for an extension of the automatic dismissal deadline to accommodate Mother's jury trial request, Mother's counsel answered "no." Yet even if Mother had opposed the extension, that would not have made the trial court aware that she had a complaint regarding the missing finding.[16] The trial court asked three times at the hearing—twice after granting the extension—whether there was "anything else" the parties needed it to consider at the hearing. Mother's counsel answered "no" once, and Mother did not bring the missing finding to the trial court's attention

---

[16] We need not and do not decide today whether a parent who opposes an extension must bring the missing finding to the trial court's attention before the initial dismissal deadline, or whether doing so during trial court proceedings that occur after the deadline is sufficient to preserve the complaint for appellate review.

27

either during or after the hearing. Because Mother did not object to the trial court's failure to comply with the non-jurisdictional findings requirement prior to the initial automatic dismissal deadline, that error cannot be addressed for the first time on appeal.[17]

Holding otherwise in this case would penalize the trial court for doing its best to honor the parents' last-minute requests for a jury trial, "'a substantive liberty guarantee of fundamental importance' that holds 'a sacred place in English and American history.'"[18] Trial courts should not fear reversal when they grant a parent's last-minute jury trial request and fail to use the magic words "extraordinary circumstances" in discussing the resulting logistical difficulties. Nothing in Section 263.401 requires that oral findings of extraordinary circumstances and best interest be stated in precisely those terms. *See F.S.*, 2022 WL 4371008, at \*6.

For these reasons, we hold that Mother did not preserve a complaint that the trial court failed to make an express finding of extraordinary circumstances when it extended the automatic dismissal deadline. The court of appeals therefore erred in rendering a judgment

---

[17] *See In re C.J.P.*, No. 05-22-00233-CV, 2022 WL 7936574, at \*4 (Tex. App.—Dallas Oct. 14, 2022, pet. filed) (holding parent failed to preserve complaint regarding trial court's failure to make Section 263.401(b) findings); *M. P.*, 2022 WL 4281617, at \*5 ("Mother did not raise her complaint about the lack of a best interest finding until after the initial dismissal date had passed, and a jury trial could have commenced before the initial dismissal date but was reset based on Mother's attorney's request. In this context, Mother has not preserved her arguments for our review.").

[18] *In re Troy S. Poe Tr.*, 646 S.W.3d 771, 781 (Tex. 2022) (Busby, J., concurring) (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 144 n.19 (Tex. 1994) and *White v. White*, 196 S.W. 508, 512 (Tex. 1917)).

of dismissal on the ground that the trial court lost jurisdiction on the automatic dismissal date.

CONCLUSION

The text, structure, and amendment history of Section 263.401, as well as our precedent, demonstrate that a trial court's failure to make the mandatory "extraordinary circumstances" and "best interest" findings prior to the initial automatic dismissal deadline is a non-jurisdictional error. Although these findings must be made expressly, our normal error-preservation rules require that a failure to make them must be brought to the trial court's attention. Mother did not do so.

Because the trial court timely extended the automatic dismissal date before it passed, it retained jurisdiction to hold the June 2021 jury trial and render a judgment. We therefore reverse the court of appeals' judgment dismissing the Department's termination suit and remand to that court for further proceedings on the merits of Mother's appeal.

J. Brett Busby
Justice

**OPINION DELIVERED:** June 16, 2023