# IN THE SUPREME COURT OF TEXAS

═══════════
No. 14-0979
═══════════

FOREST OIL CORPORATION, NOW KNOWN AS
SABINE OIL & GAS CORPORATION, PETITIONER,

v.

EL RUCIO LAND AND CATTLE COMPANY, INC.,
SAN JUANITO LAND PARTNERSHIP, LTD.,
MCALLEN TRUST PARTNERSHIP, AND
JAMES ARGYLE MCALLEN, RESPONDENTS

═══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════════════

**Argued February 8, 2017**

CHIEF JUSTICE HECHT delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE JOHNSON, JUSTICE WILLETT, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE BOYD, and JUSTICE DEVINE joined.

JUSTICE BROWN did not participate in the decision.

The principal question in this case is whether the Railroad Commission (RRC), which regulates oil and gas operations in Texas, has exclusive or primary jurisdiction over claims for environmental contamination, thus precluding suits for damages and other judicial relief. We answer no. We also decide whether the arbitration award in this case should be vacated for the evident

partiality of a neutral arbitrator or because the arbitrators exceeded their powers,[1] and whether the parties agreed to judicial review of the exemplary damages award. Again, we answer no. Accordingly, we affirm the judgment of the court of appeals.[2]

# I

Through family entities, respondent James A. McAllen controls the 27,000-plus-acre McAllen Ranch ("the Ranch") once owned by his great-grandfather, for whom the City of McAllen, on the Rio Grande River near the southern tip of Texas, is named. Petitioner Forest Oil Corporation ("Forest") has produced natural gas on the Ranch for over 30 years. Forest's leases cover about 1,500 acres, and it maintains a processing plant on 5.75 acres.

In the 1990s, McAllen sued Forest for underpayment of royalties and underproduction of the lease. The parties resolved their disputes with a "Settlement Agreement" and a "Surface Agreement". The latter provided in part:

> 8.    [Forest] will not bring on the Leases any hazardous material . . . . Further [Forest] agree[s] (1) to remove from the Leases, if, as and when required by law, any hazardous material placed or released thereon by [Forest], (2) to perform remedial work where the need therefore arises as a result of and is caused by [Forest's] operations or activities on the Leases, and (3) to comply in all respects with all federal, state and local governmental laws and regulations governing operations by [Forest] and remedial work on or associated with the Leases.

> 9.    [Forest] shall not store or dispose of any hazardous materials on the surface of the Leases. . . .

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 171.088(a) ("[T]he court shall vacate an award if . . . (2) the rights of a party were prejudiced by: (A) evident partiality by an arbitrator appointed as a neutral arbitrator; [or] (3) the arbitrators: (A) exceeded their powers . . . .").

[2] 446 S.W.3d 58 (Tex. App.–Houston [1st Dist.] 2014).

The Surface Agreement also incorporated an arbitration provision in the Settlement Agreement.

In 2004, McAllen learned from a former Forest employee that Forest had contaminated the property. Also, McAllen was told, used oilfield tubing Forest had donated to him for construction of a rhinoceros pen was contaminated with naturally occurring radioactive material (NORM). When McAllen was diagnosed with sarcoma in his ankle, resulting in the amputation of his right leg below the knee, he blamed Forest.

McAllen sued Forest for environmental contamination, improper disposal of hazardous materials on the Ranch, and maliciously donating the contaminated pipe that caused his injury.[3] Forest moved to compel arbitration, McAllen objected, and the trial court denied the motion. We reversed.[4] Meanwhile, in 2007, McAllen asked the RRC to investigate contamination of the Ranch by Forest. The RRC referred Forest to its voluntary Operator Cleanup Program to propose and implement plans to remediate soil and groundwater conditions affected by its operations on the Ranch. The RRC has approved portions of Forest's proposals but has yet to approve Forest's proposed final remediation plan.

Arbitration proceeded before a panel of three neutral lawyer-arbitrators. Forest chose B. Daryl Bristow of Houston, and McAllen chose Donato Ramos of Laredo. When Bristow and Ramos could not agree on a third arbitrator, Forest asked District Judge Dion Ramos of Houston (no relation to Donato) to name one, and each side proposed candidates. Judge Ramos chose Clayton

---

[3] McAllen was joined as plaintiff by three entities he controls, also respondents here: El Rucio Land and Cattle Company, Inc.; San Juanito Land Partnership, Ltd.; and McAllen Trust Partnership. As their positions are the same, we refer only to McAllen.

[4] *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 62 (Tex. 2008).

Hoover of Austin, whom McAllen had proposed.[5] A divided panel refused Forest's request to abate the proceedings pending final rulings by the RRC and awarded McAllen, as owner of the land, $15 million for actual damages, $500,000 for exemplary damages, and some $6.7 million for attorney fees; the panel also awarded McAllen, individually, $500,000 for personal injury actual damages. In addition to these awards, the panel declared:

a.      [Forest] has a continuing obligation and duty under the Surface Agreement to locate, remediate, and dispose of all hazardous and non-hazardous materials from the [Ranch] related to [Forest's] operations;

b.      [Forest] is required to perform remedial work where the need therefore arises, which shall include the removal of any and all hazardous and non-hazardous materials when those materials are no longer necessary in the conduct of [Forest's] operations on the lease;

c.      [Forest] is solely responsible for reimbursing [McAllen] for any future costs and expenses incurred by [McAllen] in conducting investigations which result in the identification of additional locations requiring remediation of hazardous and non-hazardous materials on the [Ranch] resulting from [Forest's] operations; and

d.      [ Forest] is solely responsible for all future remediation costs and activities related to pollutants, contaminants, and hazardous and non-hazardous materials that are known to be present and/or discovered under those lands covered by the Surface Agreement.

The panel also ordered Forest to provide McAllen a $10 million bond to assure its performance of these continuing obligations. Arbitrator Bristow issued a 40-page dissent.

Forest moved to vacate the award on several grounds. Forest argued that the RRC had exclusive or primary jurisdiction over McAllen's claims, precluding the arbitration. Forest also

---

[5] Unbeknownst to Forest, McAllen, his two lawyers, and their paralegal, none of them Houston residents, each made $2,500 contributions to newly appointed Judge Ramos' election campaign—1/6th of all he raised before the election. None had previously made a political contribution to a judicial election campaign in Houston.

offered evidence that McAllen had earlier objected to using Ramos as a mediator in another case, apparently to avoid any conflict in Ramos' serving as an arbitrator in this case. McAllen had not communicated with Ramos in the other case, and while the opposing party had contacted Ramos' staff, there was no evidence that Ramos knew of the mediation. Neither McAllen nor Ramos had disclosed these facts to Forest when Forest named Ramos an impartial arbitrator; Forest argued that this nondisclosure showed Ramos' evident partiality and thus required vacatur of the award. Forest also argued that the damages awards were in manifest disregard of Texas law, and that the parties had agreed to expanded judicial review of the arbitration award. The trial court vacated the award's $10 million bond requirement but otherwise denied Forest's motion. The court of appeals affirmed.[6]

We granted Forest's petition for review.[7] We consider first whether the RRC has exclusive or primary jurisdiction over McAllen's claims, and then whether the grounds for vacatur Forest has raised are valid.

## II

The RRC has extensive statutory authority to regulate contamination from oil and gas operations. Forest argues that its jurisdiction over those matters is exclusive or at least primary.

## A

"An agency has exclusive jurisdiction when the Legislature gives the agency alone the authority to make the initial determination in a dispute."[8] As a rule, when an agency has exclusive

---

[6] 446 S.W.3d 58, 87 (Tex. App.–Houston [1st Dist.] 2014).

[7] 60 Tex. Sup. Ct. J. 77 (Dec. 2, 2016).

[8] *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000).

jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action, and then "only at the time and in the manner designated by statute."[9] Until then, the trial court lacks subject-matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction.[10]

Forest argues that the RRC has exclusive jurisdiction over this dispute, foreclosing McAllen's common-law contamination claims, so that the arbitration panel lacked jurisdiction to enter the award and the trial court the jurisdiction to confirm it. Abrogation of a common-law right, as we have said, "is disfavored and requires a clear repugnance" between the common-law cause of action and the statutory remedy.[11] A statute's "express terms or necessary implications" must indicate clearly the Legislature's intent to abrogate common-law rights.[12] Absent such a clear indication, the RRC did not have exclusive jurisdiction over the claims at issue.

As a clear indication of such intent, Forest points to Section 26.131(a)(1) of the Texas Water Code, which states that the RRC "is solely responsible for the control and disposition of waste and the abatement and prevention of pollution of surface and subsurface water resulting from . . . activities associated with the exploration, development, and production of oil or gas . . . ."[13] But we have held that "[t]he 'solely responsible' language of Section 26.131 was added by the Legislature

---

[9] *Id.*

[10] *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002).

[11] *Cash Am. Int'l Inc.*, 35 S.W.3d at 16.

[12] *Id.*

[13] TEX. WATER CODE § 26.131(a)(1).

to resolve a jurisdictional dispute between the Railroad Commission and the Water Pollution Control Board (forerunner to the [Department of Water Resources, now the Texas Commission on Environmental Quality (TCEQ)]) concerning the regulation of water pollution by the oil and gas industry."[14] Forest also cites Section 401.415(a) of the Texas Health and Safety Code, which gives the RRC "sole authority to regulate . . . the disposal of oil and gas NORM waste" like that which contaminated the tubing that Forest gave McAllen.[15] But the provision is part of a subchapter requiring the TCEQ, the Health and Human Services Commission, and the RRC to "defin[e] their respective duties"[16] under the Texas Radiation Control Act.[17] Like Section 26.131(a), Section 401.415(a), in context, delineates authority among agencies; it does not exclude judicial authority over common-law claims. Forest cites statutes authorizing the RRC to regulate hazardous waste associated with oil and gas operations.[18] But none of those provisions remotely suggests, let alone clearly indicates, that the RRC's authority is intended to be exclusive of common-law actions.

Section 85.321 of the Texas Natural Resources Code provides that a landowner harmed by a violation of a provision of Chapter 85 of the Texas Natural Resources Code or "another law of this state prohibiting waste or a valid rule or order of the [RRC] may sue for and recover damages and

---

[14] *Jackson Cty. Vacuum Truck Serv., Inc. v. Lavaca-Navidad River Auth.*, 701 S.W.2d 12, 14 (Tex. App.– Corpus Christi 1985, writ ref'd). Other statutes accompanying Section 26.131 allocate responsibility among agencies. *See* TEX. WATER CODE §§ 26.129 ("Duty of Parks and Wildlife Department"), 26.130 ("Duty of Department of Health"), and 26.1311 ("Duty of State Soil and Water Conservation Board").

[15] TEX. HEALTH & SAFETY CODE § 401.415(a).

[16] *Id.* § 401.414.

[17] *Id*. § 401.0005.

[18] TEX. NAT. RES. CODE §§ 91.101(a)(4), 91.1011, 91.602(a).

7

have any other relief to which he may be entitled at law or in equity."[19] By conferring this right of action for statutory, rule, and order violations, Forest argues, the Legislature necessarily implied that the action is exclusive of any action asserting common-law rights. But as the United States Supreme Court has observed, "[t]he force of any negative implication . . . depends on context. . . . [T]he *expressio unius* canon does not apply unless it is fair to suppose that [the legislature] considered the unnamed possibility and meant to say no to it . . . ."[20] Here, the question is whether the Legislature intended by Section 85.321 to abrogate landowners' common-law claims, and in that context, its intent must be expressed clearly, either explicitly or by necessary implication. It is certainly *possible* to read a negative implication in Section 85.321, but it is hardly *necessary*. We cannot give the statute the effect Forest urges.

Forest argues that if landowners may seek remediation of contamination both from the RRC and through the courts, they can recover twice for the same injury, holding operators liable to pay damages for contamination they are also ordered to clean up. Further, if a landowner does not spend a damage award on remediation, the RRC remains responsible to the public to order cleanup of the contamination. But the problem lies within the operator's control. By seeking an RRC determination of contamination allegations and complying with RRC cleanup orders, an operator can reduce or eliminate the landowner's damages. Forest argues nonetheless that the risk of operators' double liability remains, is "unsound public policy", and is reason enough to confer on the RRC exclusive

---

[19] *Id.* § 85.321.

[20] *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013) (internal quotation marks omitted).

jurisdiction over contamination claims. But that is an argument for the Legislature. The issue for us is whether the Legislature has demonstrated its clear intent to do so. It has not.[21]

## B

Unlike exclusive agency jurisdiction, which implicates courts' subject matter jurisdiction, primary jurisdiction is a prudential doctrine that allocates power between courts and agencies when both have authority to make initial determinations in a dispute.[22] Under this doctrine, trial courts should allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations.[23] If primary jurisdiction requires a trial court to defer to an agency to make an initial determination, the court should abate the lawsuit and suspend final adjudication of the claim until the agency has an opportunity to act on the matter.[24]

The doctrine of primary jurisdiction does not apply to claims that are "inherently judicial in nature",[25] such as trespass,[26] one of McAllen's claims. McAllen also asserted claims for negligence,

---

[21] The parties disagree as to whether exclusive jurisdiction would bar the landowners' breach-of-contract claim. Because we find the RRC does not have exclusive jurisdiction, we need not reach this issue.

[22] *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002).

[23] *Id.*

[24] *Id.*

[25] *Amarillo Oil Co. v. Energy-Agri Prod., Inc.*, 794 S.W.2d 20, 26 (Tex. 1990).

[26] *Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 415 (Tex. 1961).

negligence per se, fraud, assault, intentional battery, and breach of contract, all inherently judicial in nature. Nor is the RRC's "primary jurisdiction . . . so broad-sweeping as to oust the courts of jurisdiction just because the Commission might have jurisdiction to determine some facts related to the controversy."[27] While the RRC may make determinations with respect to McAllen's contamination claims—indeed, it has already done so—it cannot thereby oust the court of jurisdiction to decide those claims or refer the decision to arbitration.

Forest argues that the RRC has primary jurisdiction over McAllen's claims because the Surface Agreement required that Forest remove hazardous material it placed on the Ranch only "if, as and when required by law", and only the RRC can determine what the law requires. But while RRC regulations and orders certainly inform the extent to which remediation of contamination is required by law, they do not supplant Forest's common-law duties, which are also required by law. Further, the Surface Agreement also provides that Forest "shall not store or dispose of any hazardous materials on the surface of the Leases", "will not bring on the Leases any hazardous material", and will "perform remedial work where the need therefore arises as a result of and is caused by Lessees' operations or activities on the Leases." The RRC's determinations of Forest's obligations under its rules do not preclude enforcement of Forest's obligations under the Surface Agreement. McAllen's common-law claims are not dependent on the standards of regulatory compliance. Because McAllen's claims are inherently judicial, the doctrine of primary jurisdiction does not apply and vacatur is not warranted for failure to abate the arbitration hearing.

---

[27] *Amarillo Oil*, 794 S.W.2d at 26.

## III

Forest argues that the arbitration award must be vacated because of arbitrator Ramos' evident partiality and the panel's manifest disregard of Texas law. Forest also argues that the Surface Agreement provides for full judicial review of the award.[28]

## A

Courts must vacate arbitration awards when "the rights of a party were prejudiced by . . . evident partiality by an arbitrator appointed as a neutral arbitrator."[29] Evident partiality is established by the nondisclosure of "facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality",[30] regardless of whether the nondisclosed information necessarily shows partiality or bias.[31] But disclosure is required only if facts are material; an arbitrator need not disclose "trivial" matters.[32] Some undisclosed relationships are too insubstantial to warrant vacating an

---

[28] Forest also argues that there are common-law grounds for vacating the arbitration award. While this appeal has been pending, we held in *Hoskins v. Hoskins* that the Texas Arbitration Act "leaves no room for courts to expand on [the statutory grounds for vacatur]", and a party may avoid confirmation only by demonstrating a statutory ground for vacatur. 497 S.W.3d 490, 494 (Tex. 2016). Forest concedes that *Hoskins* disposes of its argument for vacatur on common-law grounds.

[29] TEX. CIV. PRAC. & REM. CODE § 171.088(a)(2)(A).

[30] *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 524 (Tex. 2014).

[31] *Burlington N. R.R. Co. v. TUCO Inc.*, 960 S.W.2d 629, 636 (Tex. 1997).

[32] *Id*. at 637.

award.[33] And an arbitrator's impartiality cannot be affected by something of which he is completely unaware.[34]

McAllen's objection to Ramos' serving as a mediator in another case was not disclosed to Forest. It is difficult to see how Ramos could be partial *to* McAllen for objecting to his serving as a mediator in a case in which McAllen was a party. One would think, if anything, the objection would have made Ramos biased against McAllen. But in any event, there is no direct evidence that Ramos knew of the possible mediation, much less that McAllen had objected to avoid any conflict with Ramos' serving as an arbitrator in this case. Even if the fact that Ramos' staff was contacted about his serving as a mediator is circumstantial evidence that Ramos knew of the mediation, we must defer to the trial court's contrary finding if supported by the evidence.[35] The trial court judged the witnesses' credibility and weight of their testimony, ultimately concluding that Ramos "should not be disqualified for failure to disclose a trivial, non-prejudicial, not consummated invitation to act as mediator." The trial court's implied finding that Ramos was unaware of the mediation is supported by the evidence.[36]

**B**

Forest argues that the arbitration award must be vacated because the panel exceeded its authority under the Settlement Agreement by awarding damages not permitted by Texas law and

---

[33] *Id*. at 633.

[34] *Mariner Fin. Group, Inc. v. Bossley*, 79 S.W.3d 30, 33 (Tex. 2002) ("Clearly, the relationship could not have influenced Nettles's partiality if, in fact, he was unaware of it during the arbitration.").

[35] *See Tenaska*, 437 S.W.3d at 523.

[36] 446 S.W.3d at 81.

issuing declarations that imposed its own notion of economic justice, all in manifest disregard of the law. In determining whether an arbitrator has exceeded his authority, the proper inquiry is not whether the arbitrator decided an issue correctly, but rather, whether he had the authority to decide the issue at all.[37]

The Settlement Agreement calls for arbitration of McAllen's claims,[38] including that Forest breached the Surface Agreement's requirement that Forest "perform remedial work where the need therefore arises as a result of and is caused by Lessees' operations or activities on the Leases." The Settlement Agreement gives the arbitrators "the authority to award punitive damages where allowed by Texas substantive law". Forest argues that the panel's award of damages exceeds Texas law, and therefore the arbitrators exceeded their authority. But the Settlement Agreement also provides that all "disputes relating to his Agreement or disputes over the scope of this arbitration clause[] will be resolved by arbitration." Under this provision, determining what damages Texas law allows is as much within the arbitrators' broad authority as determining the amount to be awarded.[39] The panel's declarations clarified Forest's remediation obligations under the agreements, outlining which materials required remediation or removal and which parties would bear future costs. All these issues are within the bounds of the parties' agreements, and the panel was authorized to decide them.

---

[37] *Hoskins v. Hoskins*, 497 S.W.3d at 494–495; *see also Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90–91, 96–97 (Tex. 2011).

[38] *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 62 (Tex. 2008).

[39] *Id.* at 61.

**C**

Generally, the Texas Arbitration Act restricts judicial review of arbitration awards, but parties can, by "clear agreement", contract for expanded judicial review.[40] Forest argues that by authorizing arbitrators "to award punitive damages where allowed by Texas substantive law", the parties clearly agreed to judicial review of any award. We disagree. One need only contrast the Settlement Agreement's treatment of discovery matters in the same paragraph. The agreement provides that the panel is to "apply the Texas Rules of Civil Procedure" and its decisions are subject to the parties' right to apply for relief to the district court, where the court shall apply an "abuse of discretion standard and render such orders as may be necessary." No such direction is provided in connection with exemplary damages. In the absence of a clear agreement to limit the panel's authority and expand the scope of judicial review, this Court may not exercise expanded judicial review of exemplary damages.

\*　　\*　　\*　　\*　　\*

Accordingly, the court of appeals' judgment is

*affirmed*.

_____
Nathan L. Hecht
Chief Justice

Opinion delivered: April 28, 2017

---

[40] *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d at 101.