**Affirmed and Memorandum Opinion and Memorandum Concurring Opinion filed August 8, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00560-CV

---

## DR. NESTOR MARTINEZ; NM HEALTH SERVICES-NORTH, P.A.; PAIN & RECOVERY CLINIC OF NORTH HOUSTON; AND CAGUAS CASUALTY CORP., Appellants

### V.

## CAPSTONE ASSOCIATED SERVICES, LTD.; CAPSTONE ASSOCIATED SERVICES (WYOMING), LIMITED PARTNERSHIP; AND CAPSTONE INSURANCE MANAGEMENT, LTD., Appellees

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-07407A**

---

### MEMORANDUM OPINION

Appellants Dr. Nestor Martinez, NM Health Services-North, P.A., Pain & Recovery Clinic of North Houston, and Caguas Casualty Corp., appeal the trial court's judgment confirming the arbitration award. Appellants raise two issues on appeal. First, the arbitration award should be vacated because of the arbitrator's

evident partiality. Second, the arbitration award should be vacated because the arbitrator exceeded his powers. We affirm the judgment of the trial court.

## I. EVIDENT PARTIALITY

In their first issue, appellants argue that the arbitration award should be vacated on the ground of evident partiality because the arbitrator failed to disclose "a long history with Appellees and their lawyers, including more than two dozen previous arbitrations, the selection of [arbitrator's] arbitration service in Appellees' contract, and political support for [arbitrator's] judicial campaign." Appellees[1] argue that appellants have failed to preserve error or waived this argument on appeal because appellants did not object to known or discovered facts regarding the arbitrator's alleged partiality during the arbitration. Appellees further argue that the campaign contribution and hosting a campaign event for the arbitrator's judicial election campaign more than eight years before the arbitration at issue are trivial and do not create any bias or appearance of impropriety.

### A. General Legal Principles

Review of an arbitration award is "extraordinarily narrow." *Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 841 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). "Under the [Texas Arbitration Act], a trial court shall vacate an award if the rights of a party were prejudiced by the 'evident partiality of an arbitrator appointed as a neutral arbitrator.'" *In re Marriage of Piske*, 578 S.W.3d 625, 628 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (quoting Tex. Civ. Prac. & Rem. Code § 171.088(a)(2)(A)). A party seeking to vacate an arbitration award bears the burden of presenting a complete record that establishes grounds for vacatur. *Id.* "Courts must vacate arbitration awards when 'the rights

---

[1] Appellees are Capstone Associated Services, Ltd., Capstone Associated Services (Wyoming), Limited Partnership, and Capstone Insurance Management, Ltd.

2

of a party were prejudiced by . . . evident partiality by an arbitrator appointed as a neutral arbitrator.'" *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431 (Tex. 2017) (quoting Tex. Civ. Prac. & Rem. Code § 177.088(a)(2)(A)).

We review a trial court's legal decision of whether to vacate an arbitration award de novo. *Builders First Source-S. Tex., LP v. Ortiz*, 515 S.W.3d 451, 455 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). We review any factual findings for legal and factual sufficiency. *Marriage of Piske*, 578 S.W.3d at 629. However, when there are no "material conflicts" in the evidence, then no deference is required. *Id*.

"[A] prospective neutral arbitrator . . . exhibits evident partiality if he or she does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *Burlington N. R. Co. v. TUCO, Inc.*, 960 S.W.2d 629, 636 (Tex. 1997). "[T]his evident partiality is established from the nondisclosure itself, regardless of whether the nondisclosed information necessarily establishes partiality or bias." *Id*. "While a neutral arbitrator need not disclose relationships or connections that are trivial, the conscientious arbitrator should err in favor of disclosure." *Id*. at 637. "[T]o preserve the integrity of the selection process, we hold that a party who could have vetoed the arbitrator at the time of selection may disqualify the arbitrator during the course of the proceedings based on a new conflict which might reasonably affect the arbitrator's impartiality." *Id*. "This standard reflects the supreme court's determination that courts should not undertake evaluations of partiality that are better left to the parties." *Builders First*, 515 S.W.3d at 462.

The parties agree that the arbitration and arbitrator are governed by the American Arbitration Association's (AAA) Commercial Rules. Regarding disclosures, Rule 17 of the AAA Commercial Rules provides:

> Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration. Failure on the part of a party representative to comply with the requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-41.

AAA Rule 17(a).

"Parties may prefer to resolve disputes through arbitration because they may choose arbitrators with extensive experience in the field related to the dispute." *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 524 (Tex. 2014). More experience may mean prior business with a party to the dispute. *Id*. Prior business is not automatically disqualifying, but disclosing the information "can help the parties attain the impartiality they seek by evaluating potential bias at the outset." *Id*. "[T]he test for evident partiality asks whether the undisclosed 'information' might convey an impression of the arbitrator's partiality to an objective observer." *Id.* at 527 (citing *TUCO*, 960 S.W.2d at 635–36).

## B.    Background

Dr. Martinez owns NM Health Services-North, P.A., d/b/a Pain & Recovery Clinic of North Houston, and Caguas Casualty Corp. (Caguas). Appellees Capstone Associated Services, Ltd. (Capstone), Capstone Associated Services (Wyoming), Limited Partnership, and Capstone Insurance Management, Ltd. (collectively Appellees) provide administrative services to owners of captive insurance companies like Caguas. Stewart A. Feldman (Feldman) and The

4

Feldman Law Firm (the Law Firm) represented appellants for a time.[2]  Feldman is the managing partner of the Law Firm and the CEO and general counsel of Capstone.  Capstone is "owned by certain of the [Feldman Law Firm's] lawyers" and is a "significant client of the [Law Firm]."

In February 2005, the appellants, appellees, and the Law Firm entered into a contract to create and provide certain services to Caguas.   After many years of doing business, a dispute arose.   Thereafter, the Law Firm withdrew from representation.  Appellees requested arbitration pursuant to an amended agreement.

During the arbitration the arbitrator provided a disclosure of conflicts to the parties indicating that he had arbitrated one other case for a Capstone company and knew lead counsel for appellees professionally.  The arbitrator did not disclose how many arbitrations he had conducted with appellees' lead counsel.  Appellants objected to arbitration and also lodged objections to the arbitrator and arbitration firm.  The first objection lodged was that appellants did not want to pursue arbitration and wanted a jury trial.  After hiring counsel, appellants objected again arguing that the arbitrator had no jurisdiction over the matter and requesting the arbitrator to "defer to another Arbiter . . . that has not ruled on the contracts before in any manner which may create a lack of neutrality or bias in moving forward."  In a third objection, appellants argued that the arbitrator was biased because Feldman had hosted a judicial campaign fundraiser in support of two judicial candidates, one being the arbitrator in this case.  All of appellants' motions to disqualify were denied by the arbitrator.

---

[2] Neither Feldman nor the Law Firm were parties to the arbitration, nor are they parties to this appeal.

After hearing and considering the evidence,[3] the arbitrator handed down an award to appellees. Appellees moved to confirm the award in the trial court while appellants moved to vacate the award based on evident partiality and that the arbitrator exceeded his authority.

In their motion to vacate the arbitration award, appellants argued that the arbitrator failed to disclose material facts regarding the relationship between the arbitrator, the arbitration company, Feldman, and the "Feldman entities." Appellants argued that Feldman is the owner of the Capstone entities and numerous other businesses, including RSL Funding, LLC. Appellants contended that these Feldma- owned companies "have a long history" of referring matters for arbitration to the arbitration company and this arbitrator specifically. Appellants argued that in "some standard Feldman entity contracts" the arbitrator and the arbitration company are explicitly written in. Appellants also argued that the judicial campaign fundraiser and donation of $1,000 by Feldman evidenced a "close personal relationship." Appellants alleged that public records revealed that the arbitration company has arbitrated ten disputes between RSL Funding and other parties. Further that lead counsel for appellees is also the general counsel for RSL Funding and that lead counsel has "likely appeared" before the arbitrator and the arbitration company. Appellants further alleged that Capstone had submitted demands to the arbitration company in at least two other disputes.

In their response, counsel for appellees attested that the twelve arbitrations involving the "Feldman entities" before the arbitration company identified by appellants, ten of them related to RSL Funding, LLC. Of those ten RSL Funding arbitrations, none of them involved the arbitrator, and lead counsel "was not involved" in those arbitrations as counsel or as a witness. The two remaining

---

[3] There is no reporter's record or transcription of the arbitration in the record on appeal.

6

arbitrations involved Capstone. Lead counsel attested that he did not represent Capstone in those arbitrations and that the arbitrator was not involved as an arbitrator in those arbitrations. In response to interrogatories, appellees responded that lead counsel:

> has been representing the [appellees] and other parties in arbitrations since 2013. Since that time [counsel] has initiated several arbitrations involving the [appellees] and other parties by sending a Demand for Arbitration to [the arbitrator] as lead neutral for [the arbitration company]. . . . [Counsel] has represented or is representing [appellees] in nineteen arbitrations since 2013. . . . Of those nineteen arbitrations, [the arbitrator] has arbitrated two of them. The first was in 2013, and the second involved [appellants].

Appellants argue that the arbitrator failed to disclose that counsel for appellees "repeatedly sent business to [the arbitrator] and his company and had previously appeared before him." Appellees further contended that they disclosed lead counsel's prior appearances before the arbitrator during the arbitration and appellants did not object.

After conducting an evidentiary hearing on appellants' motion to vacate and receiving evidence, the trial court denied the motion to vacate and granted the motion to confirm the award.

## C. Analysis

Appellants argue that the arbitrator in this matter failed to disclose that he had been "referred well over two dozen matters from [Stuart] Feldman, his Firm, and their companies since 2012 and that stream of business was ongoing." Appellants argue that this case is analogous to *Builders First Source-South Texas, LP v. Ortiz*, 515 S.W.3d 451, 455 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

7

In *Builders First*, we concluded that the arbitrator's failure to disclose "the fact that counsel for Builders First had appeared before her in two prior matters, the fact that she indicated she had performed a conflicts check but apparently had not done so, and the telephone conversation in which [the arbitrator] and Builders First's counsel appeared 'extremely friendly' and joked about prior rulings in favor of Builder's First" were enough to vacate the arbitration award under the evident partiality standard. *Id*. Appellants argue that here, the arbitrator failed to disclose that the arbitration firm had been referred "well over two dozen matters" from Feldman, the Law Firm, and their companies. However, unlike in Builders First, there is no indication of what the arbitrator knew here and failed to disclose. *See Forest Oil Corp.*, 518 S.W.3d at 431 ("[A]n arbitrator's impartiality cannot be affected by something of which he is completely unaware."). Here, it is unclear whether the arbitrator knew which entities he or the arbitration company had previously arbitrated for were "Feldman entities," knew the extent of any possible relationship between any such entities or was asked directly whether he or the arbitration company had previously arbitrated any disputes for Feldman, the Law Firm, or the "Feldman entities." *See id*. ("Some undisclosed relationships are too insubstantial to warrant vacating an award."). Whereas in *Builders First*, the arbitrator was asked "whether any of the law firms in the case had appeared before her in past arbitrations." *Id*. There, the disclosure asked a specific question which the arbitrator either mistakenly or intentionally failed to respond to accurately. *Id*. Here, there is no indication that the arbitrator was asked whether lead counsel, the Law Firm, Feldman, or the "Feldman entities" had ever appeared before him in the past.[4] There is no indication of whether appellants requested further disclosures from the arbitrator based on the representations made in the arbitrator's disclosure.

---

[4] Feldman was not a party or attorney of record for the parties in the arbitration proceeding. Feldman was a witness in the arbitration.

Instead, the arbitrator disclosed, and the evidence showed, that Capstone, one of the parties to the arbitration, had appeared once before him in another matter in 2013. The evidence showed that the arbitration firm had conducted several arbitrations over that time for appellees, but only this case and one in 2013 were arbitrated by the arbitrator—consistent with the disclosure made.

There is also no indication or argument that the arbitration firm consists solely of this one arbitrator. The evidence shows that there are at least seven other arbitrators that have arbitrated thirteen matters with the arbitration company involving appellees. *See Johnson v. Directory Assistants, Inc.*, 797 F.3d 1294, 1300–01 (11th Cir. 2015) ("Assuming [the party] had used the ADRC to conduct several arbitrations, we do not think this fact alone would lead a reasonable person to suspect partiality, especially because the ADRC uses a variety of arbitrators."). There is no evidence of what method is used and how the arbitrator is chosen once arbitration is requested. However, the evidence does not show that the arbitrator was chosen more frequently in cases involving appellees. Three other arbitrators had also arbitrated two matters for appellees over the course of seven years.

The additional disclosure that the arbitrator knew lead counsel professionally is consistent with the evidence. There is no evidence that there was any personal relationship between lead counsel and the arbitrator. There is no evidence that lead counsel had appeared before this arbitrator more than twice on behalf of appellees, once in this case and once in the 2013 case. Appellees further assert, and appellants do not dispute, that lead counsel disclosed that he had appeared before this arbitrator once before on behalf of appellees. Appellants made no objection in the arbitration and there is no evidence that appellants requested further information from either the arbitrator or lead counsel. While lead counsel attested that he has been involved in at least nineteen arbitrations before the arbitration

company, he also attested that only two involved this arbitrator. This is consistent with the disclosures made and the evidence presented.

Appellants next argue there is an on-going business relationship between the arbitrator, the arbitration company, and appellees because the contracts specifically reference the arbitration company and the arbitrator. Appellants argue that the arbitrator also failed to disclose that lead counsel for appellee had retained the arbitration company on "behalf of other Feldman companies" and had appeared before the arbitrator representing RSL in arbitrations. They argue that such relationships should have been disclosed and further demonstrates partiality. However, there is no evidence that the arbitrator or his firm knew or even requested that the arbitration company be written into such contracts.[5] That the arbitration company and arbitrator were named in "possibly" thousands of contracts, without more, is not evidence of partiality. Appellants liken this to the undisclosed relationships in *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518 (Tex. 2014).

In *Tenaska* there was some evidence demonstrating that the arbitrator did not fully disclose his relationship to the lawyers and law firm representing a party in an arbitration. *Id*. at 525. Specifically, the arbitrator was "actively soliciting business" (outside of his arbitration business) from a law firm involved in the arbitration, specifically two of the lawyers representing parties in the arbitration. *Id*. at 526. Here, appellants argue that the arbitrator "was not merely a shareholder" like the arbitrator in *Tenaska*, but the owner of the arbitration company that stood to profit from referrals from Capstone and the Law Firm. However, the arbitrator's interest in the arbitration company is unclear on this

---

[5] Appellants argue that because of the prior arbitrations that the arbitrator should have known that he was designated in the contracts, and likely in thousands of contracts. However, there is no evidence regarding what the arbitrator knew or did not know.

record. There is no evidence in the record of the "profit" the arbitrator stood to gain. There is no evidence here, like that in *Tenaska*, to demonstrate that the arbitrator was soliciting any business from lead counsel, the Law Firm, or Feldman.[6]

Appellants point to *Monster Energy Co. v. City Beverages, LLC*, wherein the United States Court of Appeals for the Ninth Circuit held that arbitrators must "disclose their ownership interests, if any, in the arbitration organizations with whom they are affiliated in connection with the proposed arbitration, and those organizations' nontrivial business dealings with the parties to the arbitration." 940 F.3d 1130, 1138 (9th Cir. 2019). Appellants have not pointed to any Texas case that requires such a disclosure. Texas requires an arbitrator to disclose "facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *TUCO, Inc.*, 960 S.W.2d at 637. This includes any "existing or past financial, business, professional, family or social relationships which are likely to affect impartiality or which might reasonably create any appearance of partiality or bias." *Id*. (quotations omitted). However, impartiality cannot be affected by something unknown. *See Forest Oil Corp.*, 518 S.W.3d at 431. On this record, the connection between appellees and the other "Feldman entities" is unclear. It is apparent that appellees were owned, at least in part, by Feldman. However, it is unclear to what extent common ownership without evidencing, at a minimum, the arbitrator's knowledge of common ownership

---

[6] In *Tenaska*, the trial court made findings of fact that were supported by "some evidence" and entitled to deference on appeal. *Tenaska*, 437 S.W.3d at 523 ("[W]e determine whether the information the trial court found that [the arbitrator] failed to disclose is supported by some evidence."). Here, because no findings of fact or conclusions of law were issued by the trial court, we infer all facts supported by the evidence and necessary to support the judgment. *In re Marriage of Piske*, 578 S.W.3d 624, 629 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (noting, however, when "an evident partiality determination did not require the resolution of material conflicts, there are no factual findings to which we must defer").

11

between appellees and other non-party entities warrants vacating an award for failure to disclose. It is further unclear on this record what interest the arbitrator holds in the arbitration company and whether he receives any financial incentive from arbitrations that he does not preside over.

Next, appellants contend that the arbitrator failed to disclose the Law Firm and Feldman held a judicial campaign fundraiser for the arbitrator at Feldman's home and made a $1,000 campaign contribution. However, "[t]he mere receipt of campaign funds, in and of itself, without an indication of communication about, or coordination of, the handling of the case, is not a basis for recusal" in matters before the judiciary. *AVPM Corp. v. Childers*, 583 S.W.3d 216, 219 (Tex. App.—Dallas 2018, no pet.). Here, the contribution took place long before the arbitration was initiated and there is no evidence that Feldman or the Law Firm communicated or coordinated with the arbitrator regarding the handling of this case or any other. "It is only in extreme circumstances that the amount of a contribution can support a judge's recusal from a case." *Id.* Appellants have provided no analysis or reasoning as to why we should apply a different rule to arbitrators, and we decline to adopt any at this time. Neither Feldman nor the Law Firm were parties or represented the parties in the arbitration, the contribution was trivial, and both the fundraiser and contribution were eight years before the arbitration. An arbitrator does not have an obligation to disclose trivial relationships or connections. *TUCO, Inc.*, 960 S.W.2d at 636.

The arbitrator's knowledge of the connections and common ownership relationships between and the other "Feldman entities," specifically RSL Funding, is unclear. The arbitrator's disclosures were accurate, and he disclosed that appellees had previously appeared before him. Lead counsel disclosed his prior appearances before the arbitrator prior to the final hearing, and appellants did not

object. Lastly, the campaign contribution and fundraiser conducted eight years before the arbitration was initiated is trivial under the facts herein.

We overrule appellants' first issue.

## II. Arbitration Agreement

In their second issue, appellants argue that the arbitration award should be vacated for three reasons. First appellants argue there is no agreement to arbitrate between appellants and appellees. Second appellants argue that even if they agreed to the arbitration provision, it is unconscionable and unenforceable. Third appellants argue that the arbitrator exceeded his authority under any applicable arbitration provision because he made an award to two entities that were not parties to the contracts or arbitration provisions.

## A. General Legal Principles

A party seeking to compel arbitration bears the burden that an arbitration agreement exists and that the claims presented fall within its scope. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *Nationwide Coin & Bullion Reserve, Inc. v. Thomas*, 625 S.W.3d 498, 503 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). The party opposing arbitration has the burden to prove an affirmative defense to the provision's enforcement, such as unconscionability, applies. *See Henry*, 625 S.W.3d at 115. "If there is conflicting evidence as to the material facts necessary to determine the issues, the trial court is to conduct an evidentiary hearing to resolve the dispute." *Thomas*, 625 S.W.3d at 503. "Texas courts give arbitration awards great deference and indulge every reasonable presumption to uphold arbitrators' decisions." *Ctr. Rose Partners, Ltd. v. Bailey*, 587 S.W.3d 514, 528 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

13

Texas law recognizes both substantive and procedural unconscionability. *Id.* "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 677 (Tex. 2006). "Generally, a contract is unconscionable if, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *Olshan*, 328 S.W.3d at 892 (quoting *In re FirstMerit Bank*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding)).

"The ultimate issue of whether an arbitration agreement is against public policy or unconscionable is a question of law for the court." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015). We defer to the trial court's factual determinations if they are supported by the evidence and review the legal determinations de novo. *Thomas*, 625 S.W.3d at 503. If there are no factual disputes, the standard of review is de novo. *Lopez*, 467 S.W.3d at 499. Arbitration clauses in attorney-client employment contracts are not presumptively unconscionable. *Id.* at 500. "[A]bsent fraud, misrepresentation, or deceit, one who signs a contract is deemed to know and understand its contents and is bound by its terms." *Id.*

An arbitrator derives his power from the parties' agreement. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 89–91 (Tex. 2011); *City of Pasadena v. Smith*, 292 S.W.3d 14, 20 n.41 (Tex. 2009). When an arbitrator disregards the contract and dispenses his own idea of justice, he exceeds his authority. *D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "However, an arbitrator does not exceed his authority simply because he

may have misinterpreted the contract or misapplied the law." *Id*. The issue is whether the arbitrator had authority to decide the issue, not whether the issue was decided correctly. *Id*.

## B. Background

In February 2005, appellants, appellees, and the Law Firm entered into a contract (2005 Engagement Agreement). One of the enclosures to the engagement agreement, entitled "Client Information: Guidelines on Firm Administration and Billing," included an arbitration provision. In 2015, appellant Caguas's insurance license was revoked. As a result, the Law Firm contended that it was necessary for the parties to execute a new engagement agreement to reinstate Caguas's license so it could resume its business (the 2015 Amendment). The 2015 Amendment also had an enclosure that contained an arbitration provision. The arbitration provision in the 2015 Amendment differed from the arbitration provision in the 2005 Engagement Agreement. The Law Firm provided the 2015 Amendment to appellants in April 2015.

In October 2015, the Law Firm sent an invoice to appellants with an updated "Client Information: Guidelines on Administration & Billing" attached thereto (October Amendment). The October Amendment further amended the arbitration provision. The Law Firm withdrew from representation in 2015. In 2016, appellants executed the 2015 Amendment.

## C. Analysis

Appellants argue that the trial court should have vacated the arbitration award because appellants never agreed to any of the arbitration agreements, the 2015 Amendment is unconscionable, and the arbitrator exceeded his authority. We address each argument in turn.

### 1. Arbitration Agreement

First, appellants argue that there is no agreement between the parties because appellees "tried to sneak arbitration provisions into the parties' agreements." Appellants argue that because neither the 2005 Engagement Agreement nor the 2015 Amendment mention the "Client Information: Guidelines on Administration & Billing" but, instead, only list the Guidelines as an "Enclosure" and did not specifically incorporate such enclosures by reference within either the 2005 Engagement Agreement or the 2015 Amendment, they never became part of the agreement between the parties. Appellants contend this means that they never agreed to any arbitration provision in 2005 or in 2015.

We decline to reach their argument regarding whether it is necessary for the Engagement Letter to specifically "incorporate by reference" the enclosures attached to the Engagement Letter because it was not raised in the trial court as a basis to vacate the arbitration award. *See* Tex. R. App. P. 33.1; *Human Biostar, Inc. v. Celltex Therapeutics Corp.*, 514 S.W.3d 844, 850 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("A party seeking to vacate an arbitration award must present any grounds for doing so to the trial court, otherwise, those complaints are waived on appeal."). Concluding this ground for vacating the award is not preserved, we move to appellants' second contention—that the arbitration provision is unconscionable and unenforceable.

### 2. Unconscionability

Appellants argue that their attorney, Feldman, amended the 2005 Engagement Agreement and the arbitration provision while still acting as appellants' attorney and as general counsel for Capstone. Appellants argue Feldman did this without disclosing that he had a conflict of interest and did not advise appellants to seek outside counsel to advise them on the amendment.

16

However, appellants failed to put on any evidence of this lack of disclosure through testimony or exhibits. *See Lopez*, 467 S.W.3d at 500. In their motion to vacate, appellants alleged that the conflict was undisclosed and informed consent was never obtained. However, appellants did not provide any record cite or point to any evidence supporting these allegations. *See id*. No affidavit was attached to the motion. At the hearing on the motion to vacate, no testimony was offered. Appellees showed through exhibits that the conflict was at least disclosed in the initial 2005 Engagement Agreement wherein the agreement provided that "Capstone is a significant client of the Firm" and that Capstone is "owned by certain of the Firm's lawyers and related parties." It is undisputed that the amended agreement was proposed in 2015 while the Law Firm and Feldman were attorneys for appellants. However, it is also undisputed that the amended agreement was not executed by appellants until 2016, months after the Law Firm and Feldman withdrew from representation. Under the circumstances presented herein, appellants failed to show that the 2015 Amendment was procedurally unconscionable.

To the extent that appellants also raise a substantive unconscionability claim, we conclude that the 2015 Amendment is not so one-sided as to render it substantively unconscionable. Contrary to appellants' argument, the agreement itself does not provide that only one side may appoint the arbitrator or arbitral association, but both sides have the power to initiate and appoint a "recognized and neutral" arbitrator or arbitral association. Appellants assert that Feldman is the "most likely party to instigate arbitration," however both sides had equal power to initiate and choose an arbitrator or association of their choice, the only requirements under the agreement being that the arbitrator be "recognized" and "neutral." *See Lopez*, 467 S.W.3d at 501 ("The provision equally binds both

parties to arbitrate claims within its scope and ensures that the same rules will apply to both parties.")  That the agreement barred the parties from choosing AAA is also not inherently unfair to either side.

It is undisputed that appellants executed the 2015 Amendment. Appellants have failed to show that the 2015 Amendment is unconscionable and unenforceable.[7]  Concluding that the 2005 Agreement was amended by the 2015 Amendment and that appellants have not shown that the 2015 Amendment was unconscionable, we now turn appellants' next contention—whether the arbitrator exceeded his authority.

### 3.  Arbitrator's Authority

Appellants next argue that even if the 2015 Amendment applies, the two parties receiving awards from the arbitrator are not parties to any of the agreements, and therefore, the arbitrator exceeded his authority in making such awards.

The 2015 Amendment covered the Law Firm and its "affiliates" and broadly allows the arbitrator to resolve "any and all other controversies, disputes or claims whatsoever" between appellants and the "affiliates" of the Law Firm, including all disputes and challenges to arbitrability.  Affiliates is not a defined term within the agreement and appellants make no argument regarding appellees' status as "affiliates."  Instead, appellants argue that because not all appellees are specifically named in the 2015 Amendment, its arbitration provision does not apply.  However, a claim is within the scope of an arbitration agreement "if the facts alleged 'touch

---

[7] In 2015 there were two modifications to the arbitration provisions: one in the 2015 Amendment and another in October 2015.  Appellants argue that the October Amendment was without consideration and, therefore, not binding.  Even assuming without deciding the October Amendment does not apply here, our analysis and the result on appeal does not change. Therefore, we do not address this argument.  Tex. R. App. P. 47.1.

matters' that are covered by, have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that contains the arbitration agreement." *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 366 (Tex. App.—Beaumont 2008, no pet.) (quoting *Penzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, no pet.)). Appellants make no argument regarding whether the claims herein as asserted by these specific appellees are outside of the scope of the agreement. *See id.* "[U]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue" and because the law favors arbitration, we overrule appellants' last argument. *See Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) ("Any doubts as to whether . . . claims fall within the scope of the agreement must be resolved in favor of arbitration.").

Concluding that the 2015 Amendment was admittedly executed by appellants and that appellants failed to show that the 2015 Amendment was procedurally unconscionable and was not "so one-sided" to be substantively unconscionable, we overrule appellants' second issue.

### III. CONCLUSION

Having overruled both of appellants' issues, we affirm the judgment of the trial court.


/s/ Ken Wise
Justice

Panel consists of Chief Justice Christopher and Justices Wise and Zimmerer. (Christopher, C.J., concurring; Zimmerer, J., concurring without opinion).