**2026 Tex. Bus. 8**



## The Business Court of Texas,
## First Division

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | § | |
| *Plaintiff*, | § | |
| v. | § | Cause No. 25-BC01A-0025 |
| LEVEL 3 COMMUNICATIONS, | § | |
| LLC, | § | |
| *Defendant*. | § | |

## Syllabus[1]

Granting a motion to confirm an arbitration award and denying a motion to vacate the same award, the Court holds: the parties' contract and applicable law gave the arbitration panel authority to decide both substantive and procedural arbitrability questions. Judgment is entered confirming the award.

---

[1] This syllabus is provided for the convenience of the reader; it is not part of the Court's opinion and should not be cited or relied upon as legal authority.



**The Business Court of Texas,
First Division**

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | § | |
| *Plaintiff*, | § | |
| v. | § | Cause No. 25-BC01A-0025 |
| LEVEL 3 COMMUNICATIONS, | § | |
| LLC, | § | |
| *Defendant*. | § | |

═══════════════════════════════════════

**Opinion and Order Entering Final Judgment**

═══════════════════════════════════════

## I.  Case Summary

¶1    On June 15, 1998, BNSF Railway Company ("BNSF") and Level 3 Communications, LLC ("Level 3") executed a Master Right-of-Way Agreement ("the MROW" or "the Agreement") by which BNSF would allow Level 3 to infringe upon BNSF's right-of-way in order to construct and install fiber optic facilities along BNSF railroad segments in the United States in exchange for cash and other consideration. *See* Arbitration Demand ("Arb. Dem.") ¶ 11, Tr. Ex. 1B at p. 4. The initial term of the Agreement was twenty-

five years. *See* Arb. Dem. ¶ 17, Tr. Ex. 1B at p. 6. The Agreement was thus anticipated to expire on June 14, 2023. *See* Arb. Dem. ¶ 19, Tr. Ex. 1B at p. 6.

¶2    BNSF gave Level 3 the right to extend the Agreement for two renewal periods. *See* MROW § 17.a, Tr. Ex. 1B at pp. 547-48. If Level 3 elected to extend the MROW, the MROW required the parties to negotiate a then-current rate. *See* MROW § 17.a, Tr. Ex. 1B at p. 548. In the event the parties failed to agree on a renewal rate during a 30-day negotiation period, Section 17 of the MROW purported to lay out a procedure (the appraisal process) by which the parties were to arrive at a mutually agreeable renewal rate. *See* MROW § 17, Tr. Ex. 1B at pp. 547-49.

¶3    On December 9, 2022, Level 3 notified BNSF of its intent to renew the MROW, and the parties commenced the 30-day negotiation period. *See* Pet. ¶ 21; Arb. Dem. ¶ 21, Tr. Ex. 1B at p. 7. The parties did not reach an agreement on the then-current renewal rate, and the negotiation period was extended several times. *See* Pet. ¶ 23; Arb. Dem. ¶¶ 26-27, 34, Tr. Ex. 1B at pp. 8, 10. The extended negotiation period ended on October 31, 2023. *See* Pet. ¶ 39. Despite the extensions, the parties did not reach an agreement on the then-current renewal rate. *See id.* ¶ 23.

¶4     The MROW contained several provisions concerning resolution of disputes between the parties. *See* MROW §§ 17-18, Tr. Ex. 1B at pp. 547-50. Section 17 set out an appraisal process to reach a renewal rate. *See* MROW § 17, Tr. Ex. 1B at pp. 547-49. Separately, the MROW contained a formal dispute resolution procedure in Section 18.b, and an arbitration clause in 18.c. *See* MROW § 18, Tr. Ex. 1B at pp. 549-50. Per its terms, the parties agreed "to submit any disputes arising out of [the MROW] and not settled pursuant to Section 18.b. to binding arbitration." MROW § 18.c, Tr. Ex. 1B at p. 549. The arbitration clause did not expressly reference renewal rate disputes or the appraisal process, either inclusively or exclusively.

¶5     On October 31, 2023, Level 3 filed a demand for arbitration with the American Arbitration Association ("AAA"). *See* Pet. ¶ 39; *see generally* Arb. Dem., Tr. Ex. 1B at pp. 1-21. The arbitration demand centered on the renewal rate dispute, specifically the methodology to be used to calculate the rate. *See* Arb. Dem. ¶ 67, Tr. Ex. 1B at p. 18. Level 3 claimed that "by failing to act in good faith and approve a rate consistent with the terms in the [MROW], BNSF waived its rights under the [MROW] including the right to enforce the appraisal process set forth in Section 17.a. . . .." Arb. Dem. ¶ 73, Tr. Ex. 1B at p. 19.

¶6     BNSF filed a *Motion to Dismiss Claimant's Demand for Arbitration and Request for Relief*, arguing that "under well-established Texas Law, an agreement to negotiate in good faith in the future is unenforceable, even if the agreement calls for a 'good faith effort' in the negotiations." Mtn. to Dismiss at p. 2, Tr. Ex. 1B at p. 135. BNSF thus asked the arbitration panel ("the Panel") to dismiss the arbitration demand and to allow the negotiations to proceed to the appraisal process. *See* Mtn. to Dismiss at p. 5, Tr. Ex. 1B at p. 138.

¶7     Before the motion was adjudicated, Level 3 filed a *First Amended Statement of Claims and Request for Relief. See generally* 1st Am. St., Tr. Ex. 1B at pp. 200-27. In it, Level 3 argued, inter alia, that the parties' agreement to the appraisal process was premised on the parties' mutual obligation to act in good faith. *See* 1st Am. St. ¶ 62, Tr. Ex. 1B at p. 218. Because BNSF had failed to act in good faith, Level 3 argued, BNSF had waived its right to enforce the appraisal process. *See* 1st Am. St. ¶ 65(i), Tr. Ex. 1B at p. 220.

¶8     On March 12, 2024, BNSF filed a second motion to dismiss. *See generally* Mtn. to Dismiss II, Tr. Ex. 1B at pp. 324-39.  BNSF again asked the Panel to dismiss the arbitration demand and to allow the parties to proceed to appraisal. *See* Mtn. to Dismiss II at p. 12, Tr. Ex. 1B at p. 335. Level 3

demurred, challenging every argument raised by BNSF in its motion. *See generally* Mtn. to Dismiss II Resp. at pp. 5-29, Tr. Ex. 1B at pp. 380-404.  On April 5, 2024, the Panel denied BNSF's motion to dismiss, concluding that "the arbitration should proceed to a hearing on the merits of Level 3's complaint." Order on Mtn. to Dismiss II at p. 2, Tr. Ex. 1B at p. 429.

¶9     On May 1, 2024, Level 3 filed an *Expedited Motion to Stay Appraisal Process and Request for Interim Award*, noting BNSF's "refus[al] to agree to postpone the appraisal process" despite the Panel's denial of BNSF's motion to dismiss. Mtn. to Stay at p. 2, Tr. Ex. 1B at p. 439. In its response, BNSF argued that "the appraisal process **must** come before any other adjudication related to the Agreement." Mtn. to Stay Resp. at p. 2, Tr. Ex. 1B at p. 467 (emphasis in original). On June 3, 2024, the Panel stayed the appraisal process. *See* Order on Mtn. to Stay at pp. 1-2, Tr. Ex. 1B at pp. 497-98.

¶10    BNSF then filed a counterclaim. *See generally* Countercl., Tr. Ex. 1B at pp. 514-26. BNSF asked the Panel to, among other things, "order[] Level 3 to participate in the agreed upon Appraisal Process." Countercl. at p. 10, Tr. Ex. 1B at p. 523.

¶11    "Disputatious" discovery proceeded in due course. Final Award ¶ 6, Tr. Ex. 1B at p. 3201. The final hearing on the merits began on March 10, 2025, in Dallas. *See* Final Award ¶ 8, Tr. Ex. 1B at p. 3201. At the conclusion of Level 3's case-in-chief, BNSF renewed its motion to dismiss as a motion for directed verdict. *See* Final Award ¶ 9, Tr. Ex. 1B at p. 3202. The Panel carried the motion to the conclusion of the hearing, and it was ultimately denied as part of the Final Award. *See* Final Award ¶ 6, Tr. Ex. 1B at p. 3201.

¶12    In issuing an award in favor of Level 3, the Panel found that BNSF had failed to negotiate in good faith, rendering further negotiations and the appraisal process futile or impossible. *See* Final Award ¶ 42, Tr. Ex. 1B at p. 3215. Consequently, the Panel determined that BNSF had "waived any right to pursue" either further negotiations or the appraisal process. *Id.* It thus "order[ed] the parties to abide by" a rate negotiated between the parties' lead negotiators earlier in the dispute resolution process. Final Award at p. 1, Tr. Ex. 1B at p. 3199.

¶13    On June 20, 2025, BNSF filed an application to vacate the arbitration award in this Court because—in BNSF's view—the Panel exceeded its authority when it replaced a contractually-mandated appraisal process with arbitration. *See* Pet. at pp. 1-2. Level 3 counterclaimed with an application to

confirm the arbitration award. *See* Countercl. at p. 1. The Court entered an agreed scheduling order on September 19, 2025, which outlined briefing deadlines for both parties. *See* Scheduling Order at p. 4. A bench trial was held in this Court on January 12, 2026.

## II.    Applicable Law

¶14    The arbitration clause in the MROW does not specify whether the Federal Arbitration Act ("FAA") or the arbitration law of the state (here, the Texas Arbitration Act ("TAA")) applies. However, the MROW does contain a Texas choice of law provision. *See* Pet. ¶ 53. The parties agree that the MROW is governed by both the FAA and TAA "[b]ecause the agreement does not specifically exclude the application of federal law." *Moody Nat'l Grapevine MT, LP v. TIC Grapevine 2, LP*, 651 S.W.3d 450, 455 (Tex. App.—Houston [14th Dist.] 2022, pet. denied); *see* Pet. ¶ 53 (citing *Moody*, 651 S.W.3d at 455); Countercl. ¶ 43 (quoting same).

¶15    Under both the TAA and the FAA, a court must—on application of a party—confirm an arbitration award "[u]nless grounds are offered for vacating, modifying, or correcting an award." TEX. CIV. PRAC. & REM. CODE § 171.087; *see also* 9 U.S.C. § 9. Section 171.088 of the TAA and Section 10 of the FAA enumerate the grounds under which a court may vacate an arbitration

award. *See* TEX. CIV. PRAC. & REM. CODE § 171.088; 9 U.S.C. § 10. Of relevance to this case, those grounds include a showing that the arbitrators exceeded their authority. *See* TEX. CIV. PRAC. & REM. CODE § 171.088(a)(3)(A); 9 U.S.C. § 10(a)(4).

¶16    "In determining whether an arbitrator has exceeded his authority, the proper inquiry is not whether the arbitrator decided an issue correctly, but rather, whether he had the authority to decide the issue at all." *Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 518 S.W.3d 422, 431 (Tex. 2017). Because arbitration is the byproduct of the parties' agreement, vacatur on the ground that the arbitrators exceeded their authority requires a showing that the arbitrators decided a matter that the agreement did not submit to their judgment.

¶17    In examining the scope of the arbitrators' authority in this case, the key issue is arbitrability. The Texas Supreme Court (like the United States Supreme Court) recognizes a distinction between questions of substantive arbitrability and procedural arbitrability. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 520 (Tex. 2015) (citing *BG Grp., PLC v. Republic of Arg.*, 572 U.S. 25, 33 (2014); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 81 (2002)). Whether a particular dispute is arbitrable—"a

gateway dispute"—is a question of substantive arbitrability. *Howsam*, 537 U.S. at 84. Satisfaction (or not) of a condition precedent to arbitration, and similar matters not at issue here, present questions of procedural arbitrability. *G.T. Leach Builders*, 458 S.W.3d at 520. The outcome of the case at hand turns not on what is arbitrable, but on *who decides* what is arbitrable.

### III.  Discussion

¶18  In its *Original Petition and Application to Vacate Arbitration Award*, BNSF identified TAA Section 171.088(a)(3)(A) and 9 U.S.C. § 10(a)(4) as its bases for vacatur. *See* Pet. ¶ 54; *see also* TEX. CIV. PRAC. & REM. CODE § 171.088(a)(3)(A); 9 U.S.C. § 10(a)(4). Specifically, BNSF argued that the Panel exceeded its authority in two ways. *See* Pet. ¶¶ 72-74. First, BNSF argues the Panel exceeded its authority "by ignoring [a] clear contractual mandate and permitting Level 3 to replace the required *appraisal* process for the renewal-rate determination with *arbitration.*[1] BNSF Supp. at p. 27 (emphases in original); *see* Pet. ¶ 68. Second, BNSF argues (in the alternative) that the Panel exceeded its authority by allowing arbitration prior to the

---

[1] In a variation of this argument, BNSF also argued that appraisal was "at a minimum" a condition precedent to arbitration, and as such, should be completed prior to arbitration. Pet. ¶ 62; *see* BNSF Supp. at p. 25.

parties' completion of a condition precedent to arbitration, including the formal settlement process described in Section 18.b of the MROW. *See* BNSF Supp. at p. 28; Pet. ¶ 73.

¶19　The key issue in this case is arbitrability: did the Panel have the authority to determine whether the renewal rate dispute was subject to arbitration, and thereafter, to enter an award resolving that dispute? For the reasons that follow, the Court finds that it did.

¶20　BNSF's primary argument—that the Panel exceeded its authority by adjudicating the renewal rate dispute despite contractual provisions requiring resolution of that issue by other means—raises a question of substantive arbitrability. In the absence of contractual provisions to the contrary, questions of substantive arbitrability are typically decided by the court. *See G.T. Leach Builders*, 458 S.W.3d at 520. Here, however, the parties agreed—in the MROW's arbitration clause—that "[a]ny arbitration under this Agreement shall be conducted in accordance with the Commercial Rules of the American Arbitration Association." MROW § 18.c, Tr. Ex. 1B at p. 549.

¶21　Rule 7 of the AAA Commercial Rules grants to the arbitrator the "power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to

the arbitrability of any claim or counterclaim without any need to refer such matters first to a court." AAA Comm. R. 7. "[A]s a general rule, an agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration." *TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 708 (Tex. 2023); *see Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("[T]he express adoption of [the AAA rules] presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

¶22 The parties' agreement to arbitrate "in accordance with" the AAA Commercial Rules (*see* MROW § 18.e, Tr. Ex. 1B at p. 549) bound the parties to those rules, absent conflict between the arbitration agreement and the rules. *See TotalEnergies*, 667 S.W.3d at 709. And once "the parties have contractually agreed to delegate arbitrability issues to the arbitrator, courts must enforce that agreement." *Id.* at 702. Accordingly, the parties' adoption of the AAA Commercial Rules removed questions of substantive arbitrability from the hands of the court and placed it squarely in the hands of the arbitrators.

¶23  Because substantive arbitrability was contractually entrusted to the arbitrators, the Court cannot hold, as BNSF urges, that the arbitrators exceeded their authority in determining that the renewal rate dispute was arbitrable or in rendering an award resolving that dispute. On this basis, the Court rejects BNSF's motion to vacate the award. In so holding, the Court does not reach Level 3's claims that "BNSF did not raise a timely objection to arbitrability." Level 3 Opening Br. at p. 25.

¶24  BNSF's alternative argument—that the Panel exceeded its authority by allowing arbitration prior to the completion of a condition precedent—raises a question of procedural arbitrability. In this regard, Texas law is clear: the arbitrators—not the court—have the authority to determine procedural arbitrability. *See G.T. Leach Builders*, 458 S.W.3d at 520. To the extent BNSF argues that Section 17's appraisal process and Section 18.b's formal settlement process were conditions precedent to arbitration, the enforceability or satisfaction of such conditions were matters for the Panel to decide. Nothing in the parties' agreement operates to shift such questions into the court's hands.

¶25  In sum, an arbitration panel only exceeds its power when it "exceeds [its] contractual authority." *Clendening v. Blucora, Inc.*, No. 05-22-

01190-CV, 2024 WL 980359, at *2 (Tex. App.—Dallas Mar. 7, 2024, no pet.) (mem. op.). Here, the Panel had authority to decide *both* substantive *and* procedural arbitrability issues by virtue of the contract language and applicable law. Thus, the Panel—per the terms of the MROW—had the power to decide whether the renewal rate dispute was subject to arbitration, whether any condition precedent to arbitration was enforceable or satisfied, and ultimately, how to resolve the renewal rate dispute.

¶26 "[J]udicial review of an arbitration award is extraordinarily narrow" and "focuses on the integrity of the process, not the propriety of the result." *Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 446 S.W.3d 58, 75 (Tex. App.—Houston [1st Dist.] 2014), *aff'd*, 518 S.W.3d at 432. "Review of an arbitration award is so limited that even a mistake of fact or law by the arbitrator is not a proper ground for vacating an award." *Id.*; *see also Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 826 (Tex. App.—Dallas 2009, no pet.). BNSF urges the Court to hold that the renewal rate dispute should not have been arbitrated. But under the parties' contract and applicable law, the Panel—and not this Court—was entrusted to make that determination. Accordingly, BNSF's arguments for vacatur must be rejected and the Court must confirm the arbitration award.

¶27 Finally, insofar as Level 3 has pleaded for recovery of fees and costs (*see* Level3 Opening Br. at p. 40), the Court notes that no evidence of fees or costs was presented at trial. As the party bearing the burden of proof, it was incumbent upon Level 3 to present such evidence at the time of trial. *See Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020). In the absence of the same, Level 3's claim for fees and costs must be denied regardless of the merits of the parties' arguments concerning recoverability.

## IV. Conclusion and Final Judgment

¶28 IT IS THEREFORE ORDERED that BNSF's *Application to Vacate Arbitration Award* is DENIED and Level 3's *Counter-Application for Confirmation of Arbitration Award* is GRANTED. Level 3's request for additional attorneys' fees is DENIED. Judgment is RENDERED that the Final Award entered by the Panel on June 2, 2025, is CONFIRMED. All relief requested and not granted herein is DENIED.

ANDREA K. BOURESSA
Judge of the Texas Business Court,
First Division

SIGNED ON: February 24, 2026.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 111640575
Filing Code Description: Proposed Order
Filing Description: Opinion and Order Entering Final Judgment
Status as of 2/24/2026 12:04 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Eric Nichols | | eric.nichols@butlersnow.com | 2/24/2026 11:32:18 AM | SENT |
| Amanda Taylor | | amanda.taylor@butlersnow.com | 2/24/2026 11:32:18 AM | SENT |
| TJP Service | | tillotsonjohnsonpatton@gmail.com | 2/24/2026 11:32:18 AM | SENT |
| Stephani Michel | | smichel@tillotsonlaw.com | 2/24/2026 11:32:18 AM | SENT |
| Tyler Reed | | Tyler.Reed@butlersnow.com | 2/24/2026 11:32:18 AM | SENT |
| David Keltner | | david.keltner@kellyhart.com | 2/24/2026 11:32:18 AM | SENT |
| Stacy Blanchette | | stacy.blanchette@kellyhart.com | 2/24/2026 11:32:18 AM | SENT |
| Caitlyn Hubbard | | caitlyn.hubbard@kellyhart.com | 2/24/2026 11:32:18 AM | SENT |
| Jody Sanders | | jody.sanders@kellyhart.com | 2/24/2026 11:32:18 AM | SENT |
| Anne Johnson | | ajohnson@tillotsonlaw.com | 2/24/2026 11:32:18 AM | SENT |
| J.R. Johnson | | jr.johnson@butlersnow.com | 2/24/2026 11:32:18 AM | SENT |
| Chelsea Beisel | | CMBeisel@hollandhart.com | 2/24/2026 11:32:18 AM | SENT |
| Alejandra Calderon | | alejandra.calderon@butlersnow.com | 2/24/2026 11:32:18 AM | SENT |
| Devlin Browne | | dbrowne@tillotsonlaw.com | 2/24/2026 11:32:18 AM | SENT |
| Alejandra Calderon | | alejandra.calderon@butlersnow.com | 2/24/2026 11:32:18 AM | SENT |
| Melissa Reagan | | MKReagan@hollandhart.com | 2/24/2026 11:32:18 AM | SENT |
| Katherine Varholak | | KDVarholak@hollandhart.com | 2/24/2026 11:32:18 AM | SENT |
| Rosa Cortez | | rosa.cortez@txcourts.gov | 2/24/2026 11:32:18 AM | SENT |